## WALKER v. CHIEF QUARANTINE OFFICER.

### Civ. No. 2040.

District Court, D. Canal Zone Div. Balboa.
Aug. 14, 1943.

Harry H. Allen, Jr., of Ancan, Canal Zone, for plaintiff.

W. J. Sheridan, Jr., Acting U. S. Dist. Atty., of Ancan, Canal Zone, for defendant.

GARDNER, District Judge.

Plaintiff Jesse Dee Walker filed his petition in this court on August 6, 1943, against the Chief Quarantine Officer of The Panama Canal, in which he states that the petitioner is a citizen of the United States of America and that the defendant is an officer of the United States of America who is authorized and directed by law to issue to citizens of the United States of America those necessary papers and documents for said citizens to leave the Canal Zone and to return to the United States of America, commonly known and styled as "clearance." Further, that the plaintiff, as a citizen of the United States, is entitled to return to the country of his birth and his citizenship; that on the 6th day of August, 1943, the plaintiff presented himself in person to the defendant and produced his passport and other documents supporting his claim to American citizenship; that his passport was found by the defendant to be in proper order and form; that the defendant then and there wrongfully refused to issue the necessary documents for the petitioner to leave the Canal Zone for the United States of America, in violation of the duty imposed upon him by his office, and that his refusal was wrongful and unlawful and precluded the petitioner from departing from the Canal Zone and returning to the United States of America.

The petition prayed that an alternative writ of mandamus be issued, directed to the defendant and commanding him either to issue the necessary documents which would permit the petitioner to leave the Canal Zone and to enter the United States or to appear before this court upon a day certain to show cause, if any he had, why he should not do so.

Upon the filing of the petition, the court notified the District Attorney's Office and, pursuant to agreement, the alternative writ of mandamus was issued, and the defendant was ordered to appear before the court at the hour of 9 o'clock on the morning of the 10th day of August, 1943, to show cause, if any he had, why he had not issued the necessary papers as set forth in the petition of the petitioner.

The answer is practically an admission of the material allegations of the petition, but there is denial and affirmative pleas substantially to the effect that petitioner was not entitled to return to the country of his birth and citizenship by reason of a contract of employment entered into between the petitioner and an agent of the War Department on June 2, 1943, and that ever since said date the petitioner had been an employee of the War Department serving with the Army in the field of the Canal Zone and as such was subject to the orders of the military authorities in the Canal Zone and was not free to leave such employment and return to the United States until released by said military authorities, and that said military authorities had not released said petitioner from his contract of employment. The answer further alleged that the defendant was acting under the orders and direction of the Governor of The Panama Canal not to issue clearances to depart from the Canal Zone to employees of the War Department unless employee submitted a letter or memorandum of termination of employment from his employer, and the petitioner failed and refused to submit such letter or memorandum of termination of employment from his employer, and defendant Chief Quarantine Officer was subject to the orders and control of the Governor of The Panama Canal; that the Governor of The Panama Canal, by virtue of Order No. 8232 of the President of the United States issued on September 5, 1939, under authority of Section 8, Title 2, Canal Zone Code, was subject to the orders and direction of the officer of the Army commanding United States troops stationed in the Canal Zone and that the officer of the Army commanding United States troops in the Canal Zone had determined that the military situation at present existing required that the petitioner Jesse Dee Walker be held to his contract of employment until such time as he

be called for induction by his local Selective Service Board, after which time, on proper showing, he might be returned to the United States for induction into the armed forces; further, that the officer of the Army commanding United States troops in the Canal Zone had directed the Governor of The Panama Canal not to issue a clearance to depart from the Canal Zone to the petitioner Jesse Dee Walker and that, pursuant to that direction, the defendant had refused to issue any clearance to depart from the Canal Zone to the said petitioner.

It appears to the court from the pleadings, exhibits, proof, and arguments heard herein that there is but little controversy as to the facts of this case, the premises being as follows:

That the petitioner Jesse Dee Walker is 35 years of age, is married, and is a citizen of the United States of America;

His place of residence is Bixby, Tulsa County, Oklahoma, where he had an electrical business and also owns considerable property;

That, pursuant to the Selective Service Act, 50 U.S.C.A.Appendix, § 301 et seq., he was duly registered and placed in Class III-a prior to his departure from the United States;

That he secured from his local Selective Service Board an authorization to depart from the United States for the purpose of accepting employment in the Panama Canal Zone, with permission to remain absent for six months;

That on the 2d day of June, 1943, at St. Louis, Missouri, he executed an indefinite employment contract, Form No. 2, with the Division Engineer, Engineer Service Caribbean Defense Command, Panama Division, an agency of the Government of the United States of America, said contract providing that the employer was desirous of securing the labor and services of the employee upon construction projects of the Government of the United States in the Caribbean Defense Command and adjacent countries and outlying places, and that the employee was desirous of proceeding to the Canal Zone for the purpose of performing labor and rendering services upon the aforesaid projects. It was agreed that the employer would transport the employee from St. Louis, Missouri, to the Canal Zone, and that the employee would serve his employer efficiently and faithfully upon the aforesaid projects, and the type of work and the remuneration for same was stipulated. It was also provided that if the employer, after a fair trial of the employee, determined that the employee was not qualified to perform the duties of the position, or if the conduct of the employee was not satisfactory, the employer reserved the right to terminate the services of the employee with prejudice and to send him back to the United States, and, if the termination of the employment was caused by the misconduct or misrepresentation on the part of the employee, said employee must bear the expenses incidental to his return to the United States.

That pursuant to the terms of the contract, the petitioner proceeded to the Canal Zone and engaged in the work as provided by the contract;

That the petitioner recently received notice through the Induction Officer, Panama Canal Department, Quarry Heights, C. Z., to appear for physical examination to determine his fitness for induction into the armed forces of the United States, and he reported and was examined on August 4, 1943;

That, apprehending his draft status had been changed and that he would be called into service in the near future, he conversed by telephone with the chairman of his local Selective Service Board in Oklahoma and received the information from him that the petitioner would be called for induction about the 28th of August, 1943;

That the petitioner, being desirous of attending to some business affairs in the United States before being inducted into the Army, attempted to terminate his services with the Division Engineer by resignation but was advised that the Division Engineer would not accept his resignation and would not release him from his employment;

That the petitioner secured a passport and, so far as this record shows, did everything that was required, and he then applied

to the defendant Chief Quarantine Officer of the Panama Canal for a permit, commonly called a "clearance," to leave the Canal Zone for the United States;

That the defendant refused to furnish petitioner with said clearance, for the reasons only set forth in his answer herein;

That the petitioner has violated no law of the Selective Service Act, nor has he violated any rules or regulations made pursuant thereto, nor of his local Selective Service Board.

There has been no contention made to the court that when the petitioner registered under the Selective Service Act that this interfered with his liberty in any way, except in accordance with the law and regulations thereunder; viz., that he should keep his local board informed as to his occupation and address and be subject to its orders and call; neither has there been any contention that by reason of the fact that he was registered as required by the Selective Service Act that the Division Engineer or the United States Army acquired any dominion over him. It would thus seem that the fact as to whether the petitioner was or was not registered has nothing to do with the proper decision of this case. It certainly cannot be contended that simply because the petitioner has registered under the provisions of the Selective Service Act that by so doing he gave to the Army or the Division Engineer or any other governmental agency any right to restrain his liberty that it otherwise would not have had.

The Constitution of the United States of America, Amend. 5, provides that no person shall be deprived of life, liberty, and property without due process of law, and also that neither slavery nor involuntary servitude—except as punishment for crime after due and regular conviction—shall exist within the United States or any place subject to its jurisdiction.

The Canal Zone Code specifically declares that no person shall be deprived of life, liberty, or property without due process of law. § 1-1.

The Constitution of the United States and the Canal Zone Code, as set forth above, safeguarding the liberty of the citizens of the United States is in full force and effect in the Canal Zone. The court is open to administer and has the duty and responsibility to enforce and uphold these laws.

We therefore have in this case a petitioner who is an American citizen standing before the bar of this court claiming the protection of these basic safeguards of liberty.

█ There can be no question that the petitioner is being deprived of his liberty if he is prevented from leaving the Canal Zone after having complied with all the laws and regulations. Crandall v. Nevada, 6 Wall. 35, 18 L.Ed. 744; Ives v. South Buffalo R. Co., 201 N.Y. 271, 94 N.E. 431, 34 L.R.A., N.S. 162.

There can be no contention, even though he executed the contract in question, but that if he is compelled and forced to labor for the Division Engineer, a governmental agency, under said contract until such time as the Division Engineer desires to dispense with his services, all against his will and consent, that this will be involuntary servitude or involuntary service. It is immaterial that the petitioner in this case entered into the contract voluntarily and with full knowledge of the conditions of his employment.

States have enacted statutes providing for compulsory service or penalties for failing to perform services and obligations of voluntary contracts, and such statutes have been declared unconstitutional by the Supreme Court of the United States many times. Therefore, conceding that the petitioner entered into the contract voluntarily and conceding, without deciding, that he has breached same, there is certainly no law to compel him to labor under same involuntarily or to penalize him for failure to do so. The employer can, of course, institute an action against the employee in a proper case to recover damages for his breach. See "Peonage," Vol. 48 Corpus Juris, p. 801; "Constitutional Law," Vol. 12 Corpus Juris, p. 937, 16 C.J.S., Constitutional Law, § 203, and there are hundreds and hundreds of decisions supporting this text and none to the contrary.

We therefore inevitably arrive at the definite conclusion that, even though the petitioner executed the contract and breached it, under the law he can not be deprived of

his liberty nor can he be forced to labor involuntarily.

We will consider the contention of the defendant and respondent as set forth in his answer and in the exhibits and argument of counsel; viz., that the petitioner was an employee of the War Department serving with the Army in the field of the Canal Zone and, as such, was subject to the orders of the military authorities in the Canal Zone and was not free to leave such employment to return to the United States until released by the military authorities; that defendant refused to issue clearance to the petitioner because said defendant was acting under the orders and direction of the Governor of The Panama Canal and because petitioner had not been released from his employment; that the Governor of The Panama Canal, by virtue of Executive Order 8232 of the President of the United States issued on September 5, 1939, under authority of section 8, title 2, Canal Zone Code, is subject to the orders and direction of the Army officer commanding United States troops stationed in the Canal Zone and that said officer made a determination that the military situation existing at present required that the petitioner be held to his contract of employment until such time as he was called for induction by his local Selective Service Board, at which time, upon proper showing, he might be returned to the United States for induction.

The Executive Order of the President referred to and which is authorized by an Act of Congress, and as set forth in the Canal Zone Code, title 2, section 8, is as follows: "In time of war in which the United States is engaged or when in the opinion of the President war is imminent, such officer of the Army as the President may designate shall, upon the order of the President, assume and have exclusive authority and jurisdiction over the operation of the Panama Canal and all its adjuncts, appendants and appurtenances, including the entire control and government of the Canal Zone. During a continuance of such condition the Governor of the Panama Canal shall be subject to the order and direction of such officer of the Army in all respects and particulars as to the operation of the Canal and all duties, matters and transactions affecting the Canal Zone."

The Executive Order was issued on September 5, 1939. Since that time, we have had ample opportunity to investigate, consider, construe, and interpret said order and its effect, and, in considering same, we have been aided by the contemporaneous construction of the Statute.

It will be observed that the statute was enacted by Congress on August 24, 1912; therefore, it was in effect during World War I.

The court has construed this statute and order as meaning nothing more nor less. than that the President of the United States has delegated to the officer of the Army designated by the Executive Order all the power and authority that the President possesses which is susceptible of delegation,. namely, all that power and authority which is exercised in normal times by the Governor of The Panama Canal, and that the Governor of The Panama Canal is subject to the orders, authority, and direction of such officer of the Army. This, of course, includes executive and administrative functions and also the power to issue, promulgate, and execute orders and regulations respecting the many activities in the Canal Zone.

Our conclusion about the matter is that, so far as civil authority is concerned, the Army officer designated by the Executive Order has exactly the same powers that the Governor of The Panama Canal had before the Executive Order was issued and no more.

We therefore assume from the premises. herein and from our experience that the designated officer of the Army, who is the Commanding General of the Panama Canal Department, acts in a dual capacity; on the one hand, as Commanding General of the Panama Canal Department of the Army, he directs the administration and execution of all military laws, and, pursuant to said laws, he is authorized to promulgate orders, regulations, etc.; on the other hand, by virtue of the Executive Order he directs the administration and execution of the laws of the United States and the laws of the Canal Zone, and, pur-.

suant to those laws and in accordance with same, he is authorized to make regulations and to issue orders. Thus, there is assured that coordination between the military and civil laws and authorities which is necessary during war times, the predominance being given to the military, inasmuch as in time of war the interests of protection and defense are paramount. But certainly the Executive Order does not give the Commanding General of the Panama Canal Department any right to nullify the laws of the United States or the laws of the Canal Zone.

It will be observed that Canal Zone Code, title 2, section 141, provides that the President is authorized to make rules and regulations, and to alter and amend same from time to time, touching the right of any person to enter, remain upon, or pass over any part of the Canal Zone, and for the detention of any person entering the Canal Zone in violation of such rules and regulations. Such rules and regulations have been formulated and upheld by the courts of the Canal Zone many times.

It will be observed that there is no authority contained in this provision of the Code, or any other provision of the Code, preventing any one from leaving the Canal Zone, and, presumably, if Congress had intended to give that power to the President they would have done so.

It is contended, however, that, because of the state of war now existing and the circumstances of the military situation at the present time, the Commanding Officer designated has determined that the petitioner be held to his contract of employment until such time as he is called for induction into the armed service by his local Selective Service Board, at which time, upon the proper showing, he might be returned to the United States for induction, and that, based upon that determination and by virtue of the power vested in said officer by the Executive Order, the defendant was directed to refuse to deliver to the petitioner the clearance which would allow him to leave the Canal Zone.

The court is not unmindful of the fact that there has been a great deal of agitation, discussion, and argument about proposed laws to conscript labor and to require laborers to work where commanded to do so during the present war, but there has been no contention made to the court in this case that such laws have been passed nor that there is any law to that effect, either in the United States or in the Canal Zone.

From the premises stated and the reasons given above, we have arrived at the definite conclusion that there is nothing in the laws of the United States or the Canal Zone nor any authority or power granted by the Executive Order which authorizes a refusal by the defendant to perform the ministerial duties which were necessary in order that the petitioner might have the liberty of leaving the Canal Zone.

By this process of elimination we have arrived at the defendant's contention as contained in the answer and in the memorandum of the Commanding General to the Governor of The Panama Canal of August 9, 1943, which presents the serious question of the civil or military status of the petitioner and whether the Commanding General of the Panama Canal Department, under military law, has the right to prevent the petitioner from leaving the Canal Zone.

The defendant has offered no authorities to sustain his contention except two typewritten excerpts, which, presumably, are opinions from the Judge Advocate General of the United States Army and which were rendered in 1919.

The opinion and facts were substantially as follows:

A civilian laborer was attached to the Civilian Labor Bureau of the United States Army in France. While not regarded as a member of the military forces, he was a person serving with the Army of the United States in the field and as such was subject to the Articles of War. He could not leave the government service without the consent of proper authority until the expiration of the period upon which he had contracted to serve.

A civilian clerk stationed with the American Expeditionary Force had tendered his resignation and it was not accepted. It

was stated in the opinion that the services of the civilian clerk could not be spared at that time and that the military authorities were not required to release civilian employees from service upon the application of such employee in time of war, if the circumstances were so necessitous that the loss of the man's service would prejudice the military service.

The Second Article of War, Revised Statute, 1342, is in part as follows: Title 10 U.S.C.A. Army, chap. 36, § 1473, "(d) All retainers to the camp and all persons accompanying or serving with the Armies of the United States without the territorial jurisdiction of the United States, and in time of war all such retainers and persons accompanying or serving with the Armies of the United States in the field, both within and without the territorial jurisdiction of the United States, though not otherwise subject to these articles;"

█ There is no question raised as to the sufficiency of the plaintiff's petition, and, in our opinion, it was a good petition and, if true, entitled the plaintiff to the relief sought. Defendant's answer admitted all the material allegations of the plaintiff's petition; therefore, under the Canal Zone Code such allegations are taken as true.

█ The defendant, however, affirmatively plead new matter in the answer in avoidance. Under the practice and procedure in the Canal Zone, the new matter in answer in avoidance stands controverted and the defendant has the burden of proving the affirmative allegations, but the defendant offered no proof in support of same. (C. Z.Code, t. 4, sec. 221–260.)

Notwithstanding the plaintiff is clearly entitled to the relief sought in accordance with practice and procedure in the Canal Zone, the court is unwilling to place its decision in this important matter upon the question of technical practice and procedure. It is believed that the situation and facts as shown by the pleadings, exhibits, and proof of the plaintiff are sufficient for the court to dispose of the case on its real merits, and we will proceed to do so.

The contract herein states that the employer was the Division Engineer, Engineer Service, Caribbean Defense Command, Panama Division, an agency of the Government of the United States of America; and it is further stated that it was securing employees for construction projects of the United States in the Caribbean Defense Command.

We therefore assume that the Division Engineer, Engineer Service, is a governmental agency under the jurisdiction of the War Department and engaged in the construction of projects for the United States Army.

Nothing can be found in this contract which indicates that the employer or the employee contemplated employee was to become a part or parcel of the Army, or retainer to the camps of the Army, or that he was to accompany or serve the Army, or that he was to serve with the Armies of the United States in the field, or that he would even be a civilian employee of the Army at an Army post and be subject to the usual regulations of civilian employees attached to Army posts. Further, there was nothing about the character of the work he was doing to indicate the necessity of his serving the Army in the field or the performance of any service with the Army except perhaps the construction of projects for the use of the Army. Even the type of work he was to do clearly indicates that he was to be stationary: an operator of frequency changer, which meant that he was to change or transform the electric current established and used in the Canal Zone (25-cycle) to that in use by the Army on the Canal Zone in its buildings, structures, and installations (60-cycle).

█ It so happens that The Panama Canal and all of its activities is a governmental agency, and all under the jurisdiction of the War Department. We can distinguish no difference in the petitioner's situation and that of any one working for the Canal or the civil government of The Panama Canal. Civilian employees of the War Department are in no sense a part of the Army any more than any other class of clerks in the classified service of the

government. Vol. 6 C.J.S., Army and Navy, § 34, page 417; Schreiner v. United States, 43 Ct.Cl. 480.

■ It is true that a civilian employee serving in the field or at a military post is subject to the military regulations and the lawful orders of superiors, and this by reason of the statute set forth above.

The following decisions have construed the statute mentioned above: Ex parte Falls, D.C., 251 F. 415; Ex parte Gerlach, D.C., 247 F. 616; Ex parte Jochen, D.C., 257 F. 200; Hines v. Mikell, 4 Cir., 259 F. 28.

All of the above are cases where employees were tried by courts-martial under the military law for various offenses, and they hold that the employees involved were subject to military law. In two of the cases the employees were seamen serving on transports supplying troops in foreign lands; another, a superintendent, Quartermaster Corps, serving in the Army on the Mexican border, in another, a civilian stenographer and auditor employed in the Construction Quartermaster's Office at a cantonment in the United States. All of these cases occurred in time of war.

We have no hesitancy in saying we agree and approve the courts' construction of the statute in the above cases, but we respectfully submit that the situation and facts of these cases and the status of the employees were entirely different from the petitioner herein.

In the case of Ex parte Weitz, D.C., 256 F. 58, 59, the court in its opinion construed the statute, which, in our opinion, clearly distinguishes the situation, the facts, and the employee in the instant matter from those involved in the cases cited above. In this opinion the court stated that "retainers to the camp" means officers' servants and the like, as well as camp followers generally, and quoted from Davis' Military Law, page 478. Further, that persons accompanying or serving with the Army are those who, although not enlisted, do work required in the maintenance, supply, or transportation of the Army. The opinion stated that the work Weitz was doing was not of that character and that he was no more serving with or accompanying the

Army than was a carpenter building barracks, or a laborer working on a road at the camp, or a machinist hired to work in the machine shop.

■ The statute referred to above which appears in the Articles of War is only a re-enactment of previous statutes. At the time the present statute was enacted, Congress was fully aware of the meaning of the phrase "in the field," because the Attorney General of the United States had construed the meaning of this phrase in the year 1872 (Vol. 14, Opinions of Attorney General, p. 22). The opinion states: "The words 'in the field' imply military operations with a view to an enemy. When an army is engaged in offensive or defensive operations, it is safe to say that it is an army 'in the field.' To decide exactly the boundary line between civil and military jurisdiction as to civilians attached to an army is difficult; but it is evident that they are within military jurisdiction when their treachery, defection, or insubordination might endanger or embarrass the army to which they belong in its operations against what is known in military phrase as 'an enemy.' "

The statute is plain, easily understandable, and, as applied to the situation and facts of this case at this particular time, it includes all retainers and persons accompanying or serving in the Armies of the United States in the field. There is nothing about its legislative history which would indicate that Congress intended anything more than it said, and it is not susceptible to involved and ingenious construction or far-fetched reasoning.

■ While it is true that the burden was upon the defendant under the system of practice and procedure in this jurisdiction to prove the affirmative allegations of his answer that the petitioner was employed by the War Department serving with the Army in the field of the Canal Zone, waiving this, the court is of the opinion that the facts as disclosed by the pleadings, exhibits, and the evidence of the petitioner show conclusively that the petitioner was not a retainer in any Army camp or post, that he was not accompanying or serving with the Army in the field or otherwise, and, there-

fore, that he is not amenable and subject to the military laws for terminating his employment.

There has been a veiled hint or intimation in the trial of this case that the petitioner was not acting altogether in good faith in this situation; viz., in executing the contract and coming to the Canal Zone at the expense of the Government and then terminating his employment so soon. This would have nothing to do with the proper decision of this case, but we shall consider the matter.

The contract herein was indefinite. Under its terms the employer could terminate it at will. The employee did not obligate himself for any definite term. While we have stated that in a proper case an action could be maintained for breach of contract, the contract herein, in our judgment would not have given either party a right of action against the other, assuming that the employer either discharged the employee or that the employee, after beginning the work, refused to work further.

It is true that the petitioner knew he was registered and subject to the laws and regulations of the Selective Service Act. At the time of accepting this employment, however, he was in a deferred class, and, according to his evidence, he had received the permission of his local Selective Service Board to come to the Canal Zone. I assume he and the Board thought he would not be called for service in the near future, and, according to the exhibit introduced herein, the Board granted him permission to absent himself from the United States for a period of six months, subject, of course, to call.

The petitioner also knew that, in accordance with the regulations of the Selective Service Act, after the call was issued for his induction he would have 10 days to present himself for induction and, on proper showing, 60 days in which to arrange his business affairs before he was inducted.

The court is of the opinion that the employer, Division Engineer, Engineer Service, knew just as much about the status of the petitioner as the petitioner knew when they allowed him to execute the contract. They further knew that his status was subject to change, because they knew the regulations of the Selective Service Act just as well as the petitioner. They therefore contracted with their eyes open.

The facts develop, of course, that after he executed the contract his status was changed so far as his deferment was concerned. When he received notice that he was to be physically examined, he had the right to apprehend that his induction was imminent. He did what any other reasonable and prudent man would do. The evidence shows that he called the chairman of his local Selective Service Board on the telephone and was advised that his induction would take place about August 28, 1943. It is shown that he has business affairs in the United States which would require some attention before being inducted into the Army for the duration. We cannot see that the petitioner did anything, circumstanced as he was, for which he is subject to criticism. On the other hand, we think he acted about like any other right-thinking, reasonable, prudent person would have acted.

Another matter has been suggested upon the hearing and that is the determination of the Commanding General that the military situation at present existing required the petitioner be held to his contract of employment until such time as he was called for induction by his local Board was not made until August 9, 1943, as shown by the date of the memorandum of the Commanding General of the Panama Canal Department, and that this was three days after the petitioner had demanded of the defendant a clearance, and after the petition herein was filed. We attach no importance to this contention, because we assume that the matter had been considered and the determination made and conveyed orally to the defendant by the Commanding General or the Governor of the Panama Canal before the petitioner presented himself and requested a clearance. From what we can understand, this was in accordance with an established and settled policy.

We have assumed—in fact, we are sure—that those having the matter in charge are doing what they esteem to be their duty in the premises, and we are not

unmindful of their responsibility, but we have arrived at the conclusion that they were mistaken and, after carefully considering the whole matter, have decided that the relief prayed for in the petition should be granted, and upon the hearing of the case the mandate was issued.

After the mandate was issued we arrived at the conclusion that the matter was of such importance that the court should set forth its reasons for its conclusions; therefore this memorandum has been written and will be filed with the record of the case.