### BAUER v. ACHESON, Secretary of State.

### Civ. No. 743–52.

United States District Court
District of Columbia.
July 9, 1952.

Fahy, C. J., dissented on jurisdictional grounds.

Jack Wasserman, Washington, D. C., Herbert Monte Levy, New York City, of counsel, for plaintiff.

Charles M. Irelan, U. S. Atty. for the District of Columbia, Washington, D. C., Ross O'Donoghue, Asst. U. S. Atty. for the District of Columbia, Washington, D. C., for defendant.

Before FAHY, Circuit Judge, and KEECH and CURRAN, District Judges, sitting as a statutory three-judge court.

KEECH, District Judge.

This is an action against the Secretary of State for a declaratory judgment under 28 U.S.C. § 2201, for review under the Administrative Procedure Act, 5 U.S.C.A. § 1009, and for an injunction against denial of the plaintiff's right to a passport.

The material facts are undisputed.* The plaintiff, a naturalized American citizen

In his amended answer the defendant denies the plaintiff's allegations that she is and at all times since her naturalization in 1944 has been a loyal American

since 1944, is now in Paris, France, where she is working as a journalist. From 1944 to 1948 she was employed by the United States Government in the Office of War Information and with the Civil Censorship Division of the Military Government in Occupied Germany. In 1948 she travelled to France with a valid American passport, issued by the Secretary of State. This passport was thereafter extended to January 1, 1952. On June 4, 1951, the defendant, through his agents in Paris, without notice or hearing, revoked the plaintiff's passport and has since refused to revalidate or renew it, except amended so as to be valid only for return to the United States. The State Department has failed to give any reason for revocation or refusal to renew the plaintiff's passport, other than the statement that in the defendant's opinion "her activities are contrary to the best interests of the United States." The plaintiff has been informed by the State Department that her passport will be returned to her, validated only for return to the United States, when she has completed travel arrangements for such return.

The plaintiff contends that the Passport Act of 1918, as amended, 22 U.S.C.A. §§ 223-225, or that Act as construed and applied by the Secretary of State to authorize him to revoke a passport and deny renewal without a hearing and without notification as to the basis for revocation, is unconstitutional, in that it violates the due process clause of the Fifth Amendment and ex post facto and bill of attainder provisions, art. 1, § 9, of the Constitution. She asks a declaratory judgment that the revocation and refusal to renew her passport without a hearing or advising her of the specific basis for the revocation and refusal to renew, are null and void, and that she is entitled to a passport permitting her to return to the United States, to travel, and to remain abroad; and she further prays that the defendant be enjoined from continuing to deny such passport facilities to her without hearing or advising her of the basis for such denial. It is the position

of the defendant that the issuance and revocation of passports are entirely in the realm of foreign affairs, and as such within the absolute discretion of the executive branch of the government, under its inherent power and under 22 U.S.C.A. § 211a.

In view of the important constitutional questions raised by the complaint, plaintiff's motion to convene a three-judge court, pursuant to 28 U.S.C. § 2282, was granted. This court, after full hearing and argument by respective counsel, has given careful consideration to the questions presented, and has concluded that the statute and regulations relating to the issuance, use, and revocation of passports are constitutional, in that they are susceptible of an interpretation which provides for due process.

The pertinent provision of law is 22 U.S.C.A. § 211a, which provides:

"The Secretary of State may grant and issue passports * * * under such rules as the President shall designate and prescribe for and on behalf of the United States, * * *."

Pursuant to this section the President issued Executive Order 7856, which includes the following regulations:

"§ 51.75. *Refusal to issue passport.* The Secretary of State is authorized in his discretion to refuse to issue a passport, to restrict a passport for use only in certain countries, to restrict it against use in certain countries, to withdraw or cancel a passport already issued, and to withdraw a passport for the purpose of restricting its validity or use in certain countries.

"§ 51.76. *Violation of passport restrictions.* Should a person to whom a passport has been issued knowingly use or attempt to use it in violation of the conditions or restrictions contained therein or of the provisions of the rules in this part, the protection of the United States may be withdrawn from him while he continues to reside abroad.

citizen, and that she has not and does not intend to engage in any activities contrary to the best interests of the

United States. In view of the manner in which we have decided the case, these fact issues are immaterial.

"**§ 51.77. Secretary of State authorized to make passport regulations.** The Secretary of State is authorized to make regulations on the subject of issuing, renewing, extending, amending, restricting, or withdrawing passports additional to the rules in this part and not inconsistent therewith."

Section 224 of 22 U.S.C.A. makes it unlawful when the United States is at war or during the existence of the national emergency proclaimed by the President on May 27, 1941, for any citizen of the United States to depart from or enter or attempt to depart from or enter the United States unless he bears a valid passport, and 22 U.S.C.A. § 225 prescribes a criminal penalty for violation of § 224. These sections have been continued in effect by subsequent legislation despite the President's proclamation of April 28, 1952, terminating the national emergency proclaimed May 27, 1941.

▇ From the pleadings and argument of counsel, it is clear that plaintiff basically is attacking the constitutionality of § 211a. Collaterally, plaintiff refers to the other sections. Hence, if there be a substantial constitutional question, as we hold there is, the action is a proper one for determination by a three-judge court under 28 U.S.C. § 2282.

▇ It is clear that the authority to issue passports necessarily implies authority also to regulate their use and to withdraw them. The particular questions for inquiry in this case are whether a person who has received a passport may have it summarily revoked, during the period for which it was valid, without prior notice or opportunity for a hearing and on the bald statement that "her activities are contrary to the best interests of the United States," and whether the Secretary of State may refuse to renew such passport on the same statement.

▇ It is the contention of the defendant that a passport is a purely political document addressed to foreign powers,[1] and that since a passport is in the realm of foreign affairs its issuance or denial is a political matter, entirely in the discretion of the Secretary of State and not subject to judicial review. It is true that the conduct of foreign affairs is a political matter within the discretion of the executive and legislative branches of the government, and that the courts recognize the plenary power of the President and of the Congress, singly or in combination, to perform acts peculiarly within the realm of political affairs without judicial interference.[2] There is, however, the recognized limitation on the power of the political departments of the government that their acts must be within the Constitution and not in conflict with any provision thereof.[3]

▇ The plaintiff contends that the denial of a passport to her is in violation of the bill of attainder and ex post facto provisions of the Constitution.

1. Urtetiqui v. D'Arbel, 9 Pet. 692, 699, 34 U.S. 692, 699, 9 L.Ed. 276.

2. United States v. Curtiss-Wright Corp., 299 U.S. 304, 57 S.Ct. 216, 81 L.Ed. 255; Chicago & Southern Airlines v. Waterman S. S. Corp., 333 U.S. 103, 68 S.Ct. 431, 92 L.Ed. 568; Sevilla v. Elizalde, 72 App.D.C. 108, 112 F.2d 29.

3. United States v. Curtiss-Wright Corp., supra, 299 U.S. at pages 319–320, 57 S.Ct. at page 220: "Not only * * * is the federal power over external affairs in origin and essential character different from that over internal affairs, but participation in the exercise of the power is significantly limited. In this vast external realm, with its important, complicated, delicate and manifold problems, the President alone has the power to speak or listen as a representative of the nation. * * * It is important to bear in mind that we are here dealing not alone with an authority vested in the President by an exertion of legislative power, but with such an authority plus the very delicate, plenary and exclusive power of the President as the sole organ of the federal government in the field of international relations—a power which does not require as a basis for its exercise an act of Congress, but *which, of course, like every other governmental power, must be exercised in subordination to the applicable provisions of the Constitution.*"

"A bill of attainder is a legislative act which inflicts punishment without a judicial trial."[4]

Ex post facto laws are classified in Calder v. Bull, 3 Dall. 386, 390, 3 U.S. 386, 390, 1 L.Ed. 648, as:

"1st. Every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action.

"2d. Every law that aggravates a crime or makes it greater than it was when committed.

"3d. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed.

"4th. Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offense, in order to convict the offender." This definition has been repeatedly approved.

Neither the statute nor the regulation here involved is on its face a bill of attainder or an ex post facto law. It is true that these constitutional prohibitions are not limited to punishment by criminal penalty. A bill of attainder includes any legislative act which takes away the life, liberty, or property of a particular named or easily ascertainable person or group of persons because the legislature thinks them guilty of conduct which deserves punishment;[5] and an ex post facto law is a statute which " 'in its relation to the offense, or its consequences, alters the situation of the accused to his disadvantage.' "[6] But a statute which makes the right to engage in some activity in the future depend upon past behavior, even behavior before the passage of the regulatory act, is not invalid as a bill of attainder or ex post facto law if the statute is a bona fide regulation of an activity which the legislature has power to regulate and the past conduct indicates unfitness to participate in the activity.[7] It is possible that by arbitrary administration the statute and regulation here attacked might be made to partake of the nature of a bill of attainder or ex post facto law, but such application is not inherent. Since they are susceptible of a constitutional interpretation, the court must construe the statute and regulations as constitutional.[8]

The plaintiff's contention that § 211a is in violation of her rights under the due process clause of the Fifth Amendment of the Constitution raises a more serious problem.

The Fifth Amendment provides, "no person shall be * * * deprived of life, liberty, or property, without due process of law * * *." The Supreme Court has recognized that personal liberty includes "the right of locomotion, the right to remove from one place to another according to inclination,"[9] stating, "The liberty, of which the deprivation without due process of law is forbidden, 'means not only the right of the citizen to be free from the mere physical restraint of his person, as by incarceration, but the term is deemed to embrace the right of the citizen to be free in the enjoyment of all his faculties; to be free to use them in all lawful ways; to live and work where he will; to earn his livelihood by any lawful calling; to pursue any livelihood or avocation * * *.' "[10]

4. Cummings v. Missouri, 4 Wall. 277, 323, 71 U.S. 277, 323, 18 L.Ed. 356.

5. United States v. Lovett, 328 U.S. 303, 315–317, 66 S.Ct. 1073, 90 L.Ed. 1252.

6. Thompson v. Utah, 170 U.S. 343, 351, 18 S.Ct. 620, 623, 42 L.Ed. 1061; Cummings v. Missouri, supra, 4 Wall. at pages 325–330; Ex parte Garland, 4 Wall. 333, 377, 71 U.S. 333, 377, 18 L.Ed. 366.

7. Hawker v. New York, 170 U.S. 189, 18 S.Ct. 573, 42 L.Ed. 1002; Cases v. United States, 1 Cir., 131 F.2d 916, certiorari denied 319 U.S. 770, 63 S.Ct. 1431, 87 L.Ed. 1718, rehearing denied 324 U.S. 889, 65 S.Ct. 1010, 89 L.Ed. 1437.

8. The Japanese Immigrant Case, 189 U.S. 86, 101, 23 S.Ct. 611, 47 L.Ed. 721.

9. Williams v. Fears, 179 U.S. 270, 274, 21 S.Ct. 128, 129, 45 L.Ed. 186.

10. Williams v. Fears, supra, quoting from Allgeyer v. Louisiana, 165 U.S. 578, 589, 17 S.Ct. 427, 41 L.Ed. 832.

While the Supreme Court was there considering freedom to move from state to state within the United States, it is difficult to see where, in principle, freedom to travel outside the United States is any less an attribute of personal liberty.[11] Especially is this true today, when modern transportation has made all the world easily accessible and when the executive and legislative departments of our government have encouraged a welding together of nations and free intercourse of our citizens with those of other friendly countries. Personal liberty to go abroad is particularly important to an individual whose livelihood is dependent upon the right to travel, as is claimed by the plaintiff in this case.

Aside from the provisions of §§ 224 and 225, it is unrealistic to contend that denial of an American passport does not restrict the plaintiff's right to travel abroad. Legal rights may be violated by unlawful public action although such action makes no direct demands on the individual.[12] Passports are required in many countries, and as long ago as 1929 the State Department advised American citizens leaving the United States for a country where passports are not required to carry a passport, except in travel to Canada or Mexico, and for use to facilitate reentry into the United States.[13]

Since denial of an American passport has a very direct bearing on the applicant's personal liberty to travel outside the United States, the executive department's discretion, although in a political matter, must be exercised with regard to the constitutional rights of the citizens, who are the ultimate source of all governmental authority.[14]

The liberty guaranteed by the Constitution is not absolute. "Civil liberties, as guaranteed by the Constitution, imply the existence of an organized society maintaining public order without which liberty itself would be lost in the excesses of unrestrained abuses."[15] Thus, freedom to travel abroad, like other rights, is subject to reasonable regulation and control in the interest of the public welfare. However, the Constitution requires due process and equal protection of the laws in the exercise of that control.

"Due process of law·has never been a term of fixed and invariable content."[16] Due process does not require a judicial hearing,[17] but merely a procedure in which the elements of fair play are accorded. Essential elements of due process are notice and an opportunity to be heard before the reaching of a judgment,[18] but the particular procedure to be adopted may vary as appropriate to the disposition of issues affecting interests widely varying in kind.[19]

The court recognizes that in the matter of passports the executive department of the government, acting through the Secretary of State, must necessarily be accorded wide discretion in determining when and where the protection of the United States

---

11. In Walker v. Chief Quarantine Officer, D.C., 69 F.Supp. 980, it was held that a United States Citizen was being deprived of his liberty in violation of the Constitution if he was prevented from leaving the Panama Canal Zone after having complied with all the laws and regulations.

12. Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 141, 71 S.Ct. 624, 95 L.Ed. 817.

13. Browder v. United States, 312 U.S. 335, 338, 61 S.Ct. 599, 85 L.Ed. 862.

14. United States v. Curtiss-Wright Corp., supra.

15. Cox v. New Hampshire, 312 U.S. 569, 574, 61 S.Ct. 762, 765, 85 L.Ed. 1049.

16. Federal Communications Commission v. WJR, 337 U.S. 265, 275, 69 S.Ct. 1097, 1103, 93 L.Ed 1353.

17. L. B. Wilson, Inc. v. Federal Communications Commission, 83 U.S.App.D.C. 176, 185, 170 F.2d 793, 802; Barry v. Hall, 68 App.D.C. 350, 353, 98 F.2d 222, 225.

18. L. B. Wilson, Inc. v. F. C. C., supra.

19. Federal Communications Commission v. WJR, supra. However, the hearing provisions of the Administrative Procedure Act, 5 U.S.C.A. § 1001 et seq., have been held applicable to hearings the requirement for which has been read into a statute in order to save the statute from invalidity. Wong Yang Sung v. McGrath, 339 U.S. 33, 50, 70 S.Ct. 445, 94 L.Ed. 616.

may be extended to an American citizen travelling abroad, and that it should also have discretion to deny such protection to persons whose activities abroad might be in conflict with its foreign policy. This court does not suggest that the Secretary of State is without authority to establish reasonable classifications of persons whose passports shall be revoked or not renewed. The question raised in this case is whether the inherent power of the executive department or § 211a confers upon the Secretary of State absolute discretion in the matter of passports, without regard to the principles of due process and equal protection of the law, and whether or not his discretion be exercised arbitrarily.

This court is not willing to subscribe to the view that the executive power includes any absolute discretion which may encroach on the individual's constitutional rights, or that the Congress has power to confer such absolute discretion. We hold that, like other curtailments of personal liberty for the public good, the regulation of passports must be administered, not arbitrarily or capriciously, but fairly, applying the law equally to all citizens without discrimination, and with due process adapted to the exigencies of the situation. We hold further that such administration is possible under the existing statute and regulations.

Since the Act in question is susceptible of an interpretation which would permit due process, it follows that it is not in violation of the Fifth Amendment. The President's regulation authorizing withdrawal of passports is clearly within the intent of the Congress, and is susceptible of and must be construed as exacting notice and opportunity to be heard prior to any judgment effecting revocation or refusal to renew a passport.

The third member of this court is of the view that the complaint is to be analyzed as an attack merely on the action of the Secretary of State and, as such, it involves no substantial question as to the constitutionality of the statute.

We take the view that a substantial and serious constitutional question has been raised,[20] which necessitated the convening of a three-judge court, in that the statute is susceptible of the interpretation followed by the Secretary of State, and as so interpreted and applied it would be unconstitutional. While there have been previous pronouncements by the Supreme Court reading into statutes due process provisions under certain circumstances, the statutes there involved were not so clearly analogous to the one here in question as to remove the substantial character of the constitutional question. The mere fact that in the opinion of the three judges who heard the case, the statute may be interpreted so as to provide due process, does not change the fact that there is a substantial constitutional question, and does not ipso facto require a remand to one district judge for final determination of the issues.

Since there is a substantial constitutional question, there is no doubt of the propriety of action by the three-judge court as to all questions involved in the litigation necessary for disposition of the prayer for injunction.[21] We find that this is a proper case for a final determination of the issues, since it requires no further encroachment on the time of the three-judge court for additional hearing, and remand to a single district judge would merely result in duplication.

We conclude that revocation of the plaintiff's passport without notice and hearing before revocation, as well as refusal to renew such passport without an opportunity to be heard, was without authority of law. It follows that the Secretary of State should be directed to renew or revalidate the plaintiff's passport without the amendment making it valid only for return to the

20. It is therefore our view that California Water Service Co. v. Redding, 304 U.S. 252, 58 S.Ct. 865, 82 L.Ed. 1323; Ex parte Bransford, 310 U.S. 354, 60 S.Ct. 947, 84 L.Ed. 1249, and Oklahoma Gas Co v. Oklahoma Packing Co., 292 U.S. 386, 54 S.Ct. 732, 78 L.Ed.

1318, cited by the dissenting judge, are inapplicable.

21. Sterling v. Constantin, 287 U.S. 378, 393, 53 S.Ct. 190, 77 L.Ed. 375; Osage Tribe of Indians v. Ickes, D.C., 45 F. Supp. 179, 185.

United States, unless a hearing is accorded her within a reasonable time.

Counsel will present promptly an appropriate order.

CURRAN, J., concurs.

FAHY, Circuit Judge (dissenting on jurisdictional grounds).

In my opinion the case should be decided by a single district judge rather than by a specially constituted three-judge court. This latter type of court has been authorized by Congress in circumstances which come within the following provision:

"An interlocutory or permanent injunction restraining the enforcement, operation or execution of any Act of Congress for repugnance to the Constitution of the United States shall not be granted by any district court or judge thereof unless the application therefor is heard and determined by a district court of three judges under section 2284 of this title." (28 U.S.C. § 2282 (Supp. IV 1951))

In other circumstances jurisdiction does not fall to a district court composed of three judges. California Water Service Co. v. Redding, 1938, 304 U.S. 252, 58 S. Ct. 865, 82 L.Ed. 1323;[1] see, also, Ex parte Bransford, 1940, 310 U.S. 354, 361, 60 S.Ct. 947, 84 L.Ed. 1249.[2] As said in Oklahoma Gas Co. v. Oklahoma Packing Co., 1934, 292 U.S. 386 at 391, 54 S.Ct. 732, 78 L.Ed. 1318,[3] the three-judge procedure is an extraordinary one, designed for a specific class of cases. Under such procedure an appeal may be taken directly to the Supreme Court, 28 U.S.C. § 1253 (Supp. IV 1951), to permit expeditious final disposition of a question involving the possible repudiation of an act of Congress as repugnant to the Constitution. But the basis for the claim of such repugnancy must be substantial. Jameson & Co. v. Morgenthau, 1939, 307 U.S. 171, 59 S.Ct. 804, 83 L.Ed. 1189 (see n. 1, supra); California Water Service Co. v. Redding, supra.

The amended complaint does not meet these requirements. It does not even mention the Act of Congress relied upon to support the Secretary's revocation of, and refusal to renew, plaintiff's passport, namely, 44 Stat. 887 (1926), 22 U.S.C.A. § 211a.[4] The amended complaint refers only to 22 U.S.C.A. §§ 223–225, and asserts that these provisions, as construed and applied by the defendant to the plaintiff, who is a citizen, are unconstitutional. Section 223 has to do with war-time restrictions upon the departure from or entry into the United States of an alien, and other matters equally inapplicable. Section 224 makes it unlawful under conditions therein specified for a citizen to depart from or enter the United States unless he bears a valid passport, provisions also presently inapplicable to the plaintiff.[5] Section 225 prescribes the punishment for violation of §§ 223 and 224.[6]

---

1. This case involves the predecessor provision of 28 U.S.C. § 2282, supra, which was identical in the respect here apposite to § 2282.

2. This case arose under the old Jud.Code § 266, the predecessor of 28 U.S.C. § 2281. The latter provision presently governs the convening of a three-judge district court where the attack is upon the constitutionality of a state statute. Those parts of the opinion which support the text are fully applicable here as § 266, supra, in the respect here pertinent in no way differs from § 2282.

3. This case also arose under old § 266 (see n. 2, supra).

4. This section can be traced back ultimately to Rev.Stat. § 4075, Act of May 30, 1866.

5. The defendant in its answer avers, and it is not disputed, that plaintiff's passport is valid for the purpose of permitting her to return to the United States.

6. Notwithstanding the termination by the President on April 28, 1952, of the Proclamation of May 27, 1941, referred to in § 223, the provisions of §§ 223–225 are no doubt still applicable by virtue of Acts of Congress enacted since April 14, 1952. Emergency Powers Interim Continuation Act, Public Law 313, approved by the President April 14, 1952; S.J. Res. 156, Public Law 368, approved by the President May 28, 1952; Public Law 393, approved by the President June 14, 1952; H.J.Res. 490, Public Law 428, approved by the President June 30, 1952; Public Law 450, approved by the Presi-

Even if we construe the complaint as though it implicitly attacks the constitutionality of 22 U.S.C.A. § 211a, no substantial constitutional question is presented. This section reads:

"The Secretary of State may grant and issue passports, and cause passports to be granted, issued, and verified in foreign countries by diplomatic representatives of the United States, and by such consul generals, consuls, or vice consuls when in charge, as the Secretary of State may designate, and by the chief or other executive officer of the insular possessions of the United States, under such rules as the President shall designate and prescribe for and on behalf of the United States, and no other person shall grant, issue, or verify such passports." (44 Stat. 887 (1926), 22 U.S.C.A. § 211a.)

In the first place, the constitutionality of this provision is not affected by construing it to include the power to revoke a passport. If such an interpretation is erroneous revocation has resulted from an exercise of authority not granted and would be invalid on that ground. This would leave untouched the question of constitutional validity of the statute itself, placing control of granting and issuing passports in the Secretary of State under rules prescribed by the President. On that question I think it cannot be seriously doubted that Congress acted within its authority. Congressional choice in this respect is not only plainly constitutional but is obviously

appropriate, for the subject has much to do with the conduct of foreign affairs. Indeed, when plaintiff's position is analyzed her attack upon the action of the Secretary is not in reality an assertion that the statute itself is unconstitutional but a claim that the Secretary, in administering the statute, has exceeded his powers in assuming authority to revoke, and, in any event, in not according plaintiff the safeguards to which she is entitled.[7] As indicated above, whether or not the statute includes the power to revoke is a question of statutory construction; and failure of the Secretary, or of the regulations prescribed by the President, to accord proper safeguards, does not affect the constitutionality of the statute, for if plaintiff is entitled by the Constitution to notice and hearing or other appropriate procedures, the statute must be read as requiring such procedures. The Japanese Immigrant Case, 1903, 189 U.S. 86, 23 S.Ct. 611, 47 L.Ed. 721; American Power & Light Co. v. S. E. C., 1946, 329 U.S. 90, 67 S.Ct. 133, 91 L.Ed. 103; Wong Yang Sung v. McGrath, 1950, 339 U.S. 33, 70 S.Ct. 445, 94 L.Ed. 616.[8]

In my view therefore the case is one for the usual district court composed of a single judge, with right in the parties to appeal from his decision to the Court of Appeals, followed by right of petition to the Supreme Court for review on writ of certiorari. This litigation should not be deemed within the special class of cases committed by Congress to a specially constituted three-judge court, properly con-

---

dent July 3, 1952; also, Immigration and Nationality Act, Sec. 215(a) et seq., enacted into law over President's veto, June 27, 1952.

7. The complaint nowhere asserts that 22 U.S.C.A. § 211a is invalid as an unauthorized delegation of legislative authority. Such a claim in any event would not be substantial, since the broad terms of the grant are sufficient in the area of governmental action which has to do with the conduct of foreign affairs. United States v. Curtiss-Wright Corp., 1936, 299 U.S. 304, 57 S.Ct. 216, 81 L.Ed. 255; Chicago & Southern Air Lines v. Waterman Corp., 1948, 333 U.S. 103, 68 S.Ct. 431, 92 L.Ed. 568.

8. In his concurring opinion in Anti-

Fascist Committee v. McGrath, 1951, 341 U.S. 123, 71 S.Ct. 624, 95 L.Ed. 817, Justice Frankfurter said: "The construction placed by this Court upon legislation conferring administrative powers shows consistent respect for a requirement of fair procedure before men are denied or deprived of rights. From a great mass of cases, running the full gamut of control over property and liberty, there emerges the principle that statutes should be interpreted, if explicit language does not preclude, so as to observe due process in its basic meaning. * * *" 341 U.S. at page 165, 71 S.Ct. at page 645. To like effect see Anniston Mfg. Co. v. Davis, 1937, 301 U.S. 337 at page 356, 57 S.Ct. 816, 81 L.Ed. 1143.

vened only when a substantial question is raised as to the constitutionality of an Act of Congress the enforcement, operation or execution of which is sought to be enjoined, with right of direct appeal to the Supreme Court. 28 U.S.C. § 2282, supra. Plaintiff in the end seeks at most to enjoin action of the Secretary which might be invalid because not in conformity with the proper construction of the statute under which he acts. She raises, and there is involved, no substantial question as to the constitutionality of the statute.