In the Matter of Robert Buschmann, Appellant, *v.* United New York Sandy Hook Pilots' Association et al., Respondents.

Second Department, January 6, 1975.

*Rains, Pogrebin & Scher* (*Harry H. Rains* and *Frederick D. Braid* of counsel), for appellant.

*Kelley Drye Warren Clark Carr & Ellis* (*Frederick T. Shea* and *Ned H. Bassen* of counsel), for United New York Sandy Hook Pilots' Association, respondent.

*Bigham, Englar, Jones & Houston* (*Donald M. Waesche, Jr.,* of counsel), for Board of Commissioners of Pilots, respondent.

Christ, J. This appeal requires us to consider the validity of the petitioner's dismissal from employment, in the light of claimed statutory safeguards and procedural due process protections.

The petitioner has been seeking a career as a harbor pilot in the New York Sandy Hook pilot service. To this end, in January, 1970 he enrolled in a training program which has been referred to in the record as a "pre-apprenticeship" or "applicant apprentice" program. During the course of his employment in this training program certain accusations not related to the performance of his duties were made against him by a person enrolled as an apprentice in a statutorily-authorized four-year harbor pilot apprenticeship. The petitioner was subsequently discharged from the pre-apprenticeship training course on the stated ground that his continuance therein would not be in the best interest of either the pilots individually or the United New York Sandy Hook Pilots Benevolent Association, of which the respondent Pilots' Association is a subsidiary. Although the petitioner's attorney appeared before the executive committee of the Benevolent Association to argue in his client's behalf, it is conceded that the petitioner was discharged without a written complaint having been filed and without benefit of an investigation or an evidentiary hearing. In the instant proceeding the petitioner seeks an annulment of his discharge, and reinstatement, with full seniority rights and restitution of back pay.

Pilotage service in the Port of New York is governed by the provisions of article 6 of the Navigation Law. Section 90 thereof provides that no person may be licensed as a harbor pilot for the Port of New York for certain routes (Sandy Hook, etc.) without first having served as an apprentice in the New York Sandy Hook pilot service for at least four years. The respondent Board of Commissioners of Pilots is a public body created by statute, exercising State authority (Navigation Law, § 87). It is charged with over-all supervisory responsibility in the establishment and conduct of the mandated apprenticeship program. The board has specific statutory duties: it must establish qualifications for entry; it receives and passes upon applications; it must register and certify to the Benevolent Association those persons accepted into apprenticeship; and it must examine each apprentice upon completion of apprenticeship training, prior to licensing. However, the statute vests responsibility for the actual instruction of apprentices in the executive committee of the Benevolent Association, subject to over-all board regulation.

It is undisputed that the petitioner was employed by the Pilots' Association in a training program looking eventually toward appointment to the apprenticeship program. It is also

undisputed that he never became an apprentice under the statute. Such appointment can only be made by the Board of Commissioners of Pilots. The petitioner never applied to the board for such appointment. He was never so appointed and the records of the board do not disclose any designation of him as an apprentice. It is conceded that before a person can become a pilot he must be designated as an apprentice and must serve as such at least four years thereafter (21 NYCRR 51.3).

The training program in which the petitioner was engaged was an arrangement neither mandated nor authorized by statute. When he became an employee of the Pilots' Association, the Board of Commissioners had no part in his selection. He must have been well aware that he did not have a board appointment and that he was not an apprentice. The relationship was of employer and employee and it was for the Association to say whether it would keep such a person employed or discharge him.

The arguments advanced by the petitioner at Special Term and on this appeal seek to blur these important distinctions and we are not persuaded that he was, when dismissed, an apprentice entitled to the procedural safeguards set forth in subdivisions 4 and 5 of section 94 of the Navigation Law. That section purports to deal with suspension of pilots and suspension and revocation of pilot licenses. The statute extends certain due process protections to pilots and, ambiguously, to "person[s] connected with a pilot boat" (subd. 4). We do not read the quoted language as applicable to one in the petitioner's position; section 94 must be viewed within the context of the other provisions of article 6. The availability of the procedural safeguards provided in the statute is limited to those persons who are connected in some statutorily-recognized manner with the pilotage service. Despite his enrollment in the pre-apprenticeship program, the petitioner was quite clearly not an apprentice within the statutory framework and not within the categories of persons covered by the statute.

The petitioner further asserts that, even if he was not within a class of persons to which the statutory safeguards extend, he was nevertheless entitled to a hearing prior to dismissal on procedural due process grounds under the Fourteenth Amendment. We disagree. The requirements of procedural due process apply only to the deprivation of interest encompassed by the Fourteenth Amendment's protection of liberty and property.

" To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it " (*Board of Regents* v. *Roth*, 408 U. S. 564, 577). In this case, the petitioner enjoyed no property interest either in continued participation in the pre-apprenticeship program or in advancement into apprentice-ship, since it cannot be said that he had a legitimate claim of entitlement to either " benefit ".

Likewise, the petitioner's dismissal on the express ground that his continued participation in the training program was not in the best interests of the pilots or the Benevolent Associa-tion implied no protected interest in " liberty ", even granting a broad sweep to that term (see *Board of Regents* v. *Roth*, *supra*, pp. 572–575).

Further, the record in this case disclosed no significant " rules or mutually explicit understandings " which might support a claim of entitlement to either continued participation in the pre-apprenticeship training program or to advancement into apprenticeship (*Perry* v. *Sindermann*, 408 U. S. 593, 601). In the absence of such factors no constitutionally protected inter-ests were violated by the petitioner's dismissal without a hearing.

The judgment appealed from should therefore be affirmed, without costs.

SHAPIRO, J. (dissenting). In this article 78 proceeding, the petitioner sought a judgment directing the respondents to rein-state him, without loss of seniority rights, and recovery of back pay, as a result of his alleged discharge without a hearing. The Special Term, relying upon *Board of Regents* v. *Roth* (408 U. S. 564), dismissed the petition in all respects, finding that, since the petitioner had not yet attained the status of an appren-tice within the contemplation of section 90 of the Navigation Law, he had not acquired a " property right " which would entitle him to a hearing before discharge. The majority of this court apparently agrees with the Special Term. I do not.

At the time of his discharge, the petitioner was engaged in what the respondents concede to be a three and a-half-year " pre-apprenticeship " (or " applicant apprentice ") training course. This training course is a preliminary step to formal acceptance, by the Board of Commissioners of Pilots, of applications for Sandy Hook pilot apprenticeship, a statutorily mandated four-year apprenticeship program required of all persons who seek

licensure as full harbor pilots. The appellant asserts, and on the argument of this appeal the respondents conceded, that every person whose application for Sandy Hook pilot apprenticeship registration has been accepted has completed the "pre-apprenticeship" training course. Realistically, therefore, it must be concluded that the three-and-a-half-year pre-apprenticeship training course is a *de facto* prerequisite to participation in the four-year apprentice program provided by section 90 of the Navigation Law, and hence to eventual licensure as a harbor pilot by the Board of Commissioners of Pilots.

Approximately three years after the petitioner began employment with the respondent Pilots' Association as an "applicant apprentice", he was discharged by the executive committee of the United New York Sandy Hook Pilots Benevolent Association (the parent association of the Pilots' Association). The Pilots' Association, in its answer to the petition, explained that, due to a dispute that had arisen between the petitioner and a pilot apprentice, having nothing to do with the appellant's performance as an apprentice, it had determined that it would not be in the best interest of the pilots and the benevolent association to retain him in its employ. It is undenied that no written complaint had ever been made to the board of commissioners regarding the petitioner's performance of his duties. The Pilots' Association also admits that the board made no investigation to determine the verities of the situation and that the petitioner was not given a hearing.

The Special Term found that since the petitioner was engaged only in a pre-apprenticeship program, for which there is no statutory authorization, he was not entitled to the procedural due process accorded an apprentice by subdivisions 4 and 5 of section 94 of the Navigation Law. Yet it is admitted that the pre-apprenticeship program is virtually mandatory and serves a purpose similar to, if not the same as, the apprentice program. Nevertheless, the respondents claim that such a pre-apprentice applicant is not a "person connected with a pilot boat" within the contemplation of subdivision 4 and therefore is not entitled to the benefit of the procedural due process provisions contained in section 94.

In effect, the respondents have decided, *sua sponte*, to extend a training program (regardless of what name it bears) from 4 to 7½ years, and have done so in the belief that they may safely disregard compliance with specific statutory procedural safeguards accorded aspiring harbor pilots during their last four years of training. Vague formulations, such as "pre-

apprenticeship training programs " and " pre-apprentice applicants ", developed by the respondents — whether intentionally so designed or not — have the practical effect of establishing additional requirements and procedures for pilot licensure insulated from the constitutional protections against the arbitrary exercise of administrative discretion.

The fact that no statutory protections for due process are provided in the Navigation Law for pre-apprentices is not a sufficient predicate for holding that due process protections may not nevertheless attach (cf. *Matter of Hecht* v. *Monaghan*, 307 N. Y. 461, 468). In that case the court said: "Although the statutes empowering the hack bureau and the commissioner to grant, suspend or revoke a hack driver's license do not expressly require that those licenses may be withdrawn only upon notice and an opportunity to be heard, it is not necessary that they do so. Where the exercise of a statutory power adversely affects property rights * * * the courts have *implied* the requirement of notice and hearing, where the statute was silent (see *Wong Yang Sung* v. *McGrath*, 339 U. S. 33; *Clarksburg-Columbus Short Route Bridge Co.* v. *Woodring*, 89 F. 2d 788, 790; *Anti-Fascist Committee* v. *McGrath*, 341 U. S. 123; *Railroad Comm.* v. *Pacific Gas Co.*, 302 U. S. 388; *Bauer* v. *Acheson*, 106 F. Supp. 445; *People ex rel. Copcutt* v. *Board of Health of City of Yonkers*, 140 N. Y. 1, 6–7)."

As heretofore noted, the question of whether the petitioner had attained a " property right " was answered in the negative by the Special Term on the authority of *Board of Regents* v. *Roth* (408 U. S. 564, *supra*). Such reliance is misplaced. In *Roth*, the respondent, hired for a fixed term of one academic year to teach at a State university, was informed, without explanation, that he would not be rehired for the ensuing year. The court held that the terms of his employment accorded him no " property " interest protected by procedural due process. Most important was the fact that the respondent, already licensed, was working pursuant to a fixed agreement.

More in point with the facts here is *Perry* v. *Sindermann* (408 U. S. 593), decided on the same day as *Roth*. There, the respondent had been employed as a junior college professor for four years under a series of one-year written contracts. The Regents declined to renew his employment for the fifth year, without giving him an explanation or prior hearing. Besides holding that the respondent was entitled to a hearing on First Amendment grounds, the court also found that, though a subjective " expectancy " of tenure is not protected by procedural

due process, the respondent's allegation that the college had a *de facto* tenure policy, arising from rules and understandings officially promulgated and fostered, entitled him to an opportunity of proving the legitimacy of his claim to job tenure.

The allegations of the petitioner here to the effect that representations were made to him that the pre-apprenticeship program was part and parcel of the apprenticeship program itself entitle him to an evidentiary hearing. As the Supreme Court said in *Perry* v. *Sindermann* (*supra,* p. 603), " Proof of such a property interest would not, of course, entitle him to reinstatement. But such proof would obligate * * * [the respondents] to grant a hearing at his request, where he could be informed of the grounds for his nonretention and challenge their sufficiency."

Consequently, I would reverse the judgment and remand the proceeding to the Special Term for a full evidentiary hearing.

MARTUSCELLO and LATHAM, JJ., concur with CHRIST, J.; SHAPIRO, J., dissents and votes to reverse the judgment and to remand the proceeding to Special Term for a full evidentiary hearing, with an opinion, in which HOPKINS, Acting P. J., concurs.

Judgment of the Supreme Court, Kings County, dated May 22, 1974, affirmed, without costs.