Kenneth A. KOYEN, Plaintiff,

v.

CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., Defendant.

No. 82 Civ. 1258.

United States District Court, S.D. New York.

March 24, 1983.

Dickerson, Reilly & Mullen, New York City, for plaintiff; John H. Reilly, Jr., New York City, of counsel.

Ernest J. Williams, New York City, for defendant; Sheila S. Rosenrauch, New York City, of counsel.

1. 29 U.S.C. § 621 et seq.

2. 29 U.S.C. § 623(f)(1), (3).

3. 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

4. 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). *See also Pena v. Brattleboro Retreat,* 702 F.2d 322, 324 (2d Cir.1983).

## OPINION

EDWARD WEINFELD, District Judge.

Plaintiff was employed by the defendant Consolidated Edison Company ("Con Ed") in its editorial department in July 1973 when he was 58 years of age. His job required writing corporate, consumer and stockholder communications, position papers, speeches for executives and booklets. His services were terminated in April 1981 when he was 66. Thereupon he commenced this action, charging that his discharge was because of age in violation of the Age Discrimination in Employment Act ("ADEA" or "the Act").[1] The Act permits an employer to discharge an employee based on reasonable factors other than age or for good cause.[2] The defendant contends that he was discharged solely because of unsatisfactory work performance. The jury was instructed as to the burden of proof concepts enunciated in *McDonnell Douglas Corp. v. Green*[3] and reiterated in *Texas Dep't of Community Affairs v. Burdine.*[4] It reported a special verdict that plaintiff had sustained his burden of proof that "age was a determinative factor for his discharge."[4]

The defendant now moves pursuant to Rule 50(b) of the Federal Rules of Civil Procedure for judgment notwithstanding the verdict ("n.o.v."). The plaintiff opposes and requests that the Court fix the amount of damages, an issue which the parties left for its determination.

The standard in this Circuit applicable to a motion for a judgment n.o.v. is whether "the evidence, viewed in the light most favorable to the non-movants without considering credibility or weight, reasonably permits only a conclusion in the movants' favor."[5] Con Ed contends that plaintiff

5. *Pena v. Brattleboro Retreat,* at 323 (2d Cir. 1983), *quoting Sirota v. Solitron Devices, Inc.,* 673 F.2d 566, 573 (2d Cir.1982). *See also Continental Ore Co. v. Union Carbide & Carbon Corp.,* 370 U.S. 690, 696, 82 S.Ct. 1404, 1409, 8

failed to satisfy one of the four elements of a prima facie ADEA case—to wit, that he was qualified for the position at the time of his discharge.[6] In addition, it contends that he failed to carry his ultimate burden of proving that age was a determining factor in his discharge.[7]

■ As to its first contention that plaintiff failed to establish that he was qualified for the position at the time of his termination,[8] Con Ed stresses that for the last eight months of plaintiff's employment, his supervisors considered his work unsatisfactory; that he was formally told of such dissatisfaction on a number of occasions; and that Con Ed officers had complained to plaintiff's supervisors on several occasions about the quality of plaintiff's work. This was all before the jury. Also before the jury was evidence that plaintiff had extensive writing experience; that from the date of his employment through the next seven years his work was judged to be satisfactory by his different supervisors; that on three occasions supervisors considered his work to be excellent; and that even during the last year of his employment officers of the defendant who had given him specific assignments found his work satisfactory. In the face of this conflicting evidence, it is clear that a judgment n.o.v. is precluded. It was the jury's province to resolve the dispute, and their determination cannot be considered unreasonable in light of the evidence presented.

The defendant's further contention that the jury could not reasonably have found that age was a determinative factor in Con Ed's decision to terminate him is similarly without substance. While it is true that those who made the decision to discharge plaintiff testified that it was based solely because of his unsatisfactory work performance in the last eight or nine months of his service and each denied that age was the determining factor, the jury was not bound to accept this at face value.[9] The jury had a right to weigh their denial against other evidence, which included the consistent satisfactory ratings over an seven-year period up to approximately his 65th birthday; that on one occasion, a Con Ed supervisor referred to him as "an old man";[10] and that on another, that supervisor stated that "Koyen was approaching 65, and [Con Ed] had to do something about it."[11] Defendant attempted to rebut this evidence through explanations tending to show that the statements were innocuous and the timing coincidental, and by stressing that plaintiff was discharged because of his poor work performance. The jury could have accepted this view, but did not. It was its function "to select from among conflicting inferences and conclusions that which it consider[ed] most reasonable."[12] The issue

L.Ed.2d 777 (1962); *Batista v. Rodriguez,* 702 F.2d 393, at 399 (2d Cir.1983); *Samuels v. Health and Hospitals Corp.,* 591 F.2d 195, 198 (2d Cir.1979); *Simblest v. Maynard,* 427 F.2d 1, 4 (2d Cir.1970).

6. To establish a prima facie case under ADEA, a plaintiff must show that (1) he was within the protected age group; (2) he was qualified for the position at the time of the discharge; (3) he was discharged; and (4) the circumstances of the discharge give rise to an inference of age discrimination. *Pena v. Brattleboro Retreat,* at 324 (2d Cir.1983). *See also Nash v. Jacqueline Cochran, Inc.,* 548 F.Supp. 676, 679 (S.D.N.Y. 1982).

7. *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981).

8. Con Ed rephrases this element somewhat by contending that plaintiff had to establish that "he was performing his job at a level which met the employer's legitimate expectations." Defendant's Memorandum of Law at 3. No authority cited, however, supports such a formulation. Indeed, the very cases cited by defendant use the test noted above. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Loeb v. Textron, Inc.,* 600 F.2d 1003 (1st Cir.1979); *Laugeson v. Anaconda Co.,* 510 F.2d 307 (6th Cir.1975). *See also* note 6, *supra.*

9. *See Dyer v. MacDougall,* 201 F.2d 265, 269 (2d Cir.1952) (L. Hand, J.).

10. Tr. at 99.

11. Tr. at 112.

12. *Tennant v. Peoria & Pekin Union Ry.,* 321 U.S. 29, 35, 64 S.Ct. 409, 412, 88 L.Ed. 520 (1944). *See also Bailey v. Central Vermont Ry.,* 319 U.S. 350, 353, 63 S.Ct. 1062, 1064, 87

is not whether defendant's explanations are persuasive to the Court,[13] but whether the jury could have reasonably rejected it and found in plaintiff's favor. Additionally, there was evidence from which the jury could find that plaintiff's discharge was to make way for, and to absorb the salary of, a former employee who had been rehired just two months before plaintiff's discharge, which would permit a reasonable inference that the reason assigned for plaintiff's discharge was a pretext. The evidence stated above is sufficient to support the verdict rendered. Accordingly, the defendant's motion for a judgment n.o.v. is denied.

## DAMAGES

### A. Back Salary and Other Pecuniary Losses

■ The parties have computed plaintiff's back salary and benefits from the date of discharge to the date the jury returned its verdict, December 3, 1982, in the sum of $52,645.20. Plaintiff, however, asserts that he is entitled to an additional $4,312[14] based upon salary increases he would have received but for Con Ed's unlawful age discrimination against him. The defendant responds that the jury only determined that his discharge was based on age discrimination but did not decide that his adverse performance ratings were discriminatory or based on his age; accordingly, it contends that his unsatisfactory ratings in his last year of employment would not have entitled him to salary increases even had he not been discharged. This narrow reading disregards the reality of the jury's verdict. The jury was instructed that in order to return a verdict for plaintiff, it had to find defendant's contention that "the reason for plaintiff's discharge ... was a deterioration in the quality of [his] work performance ... was not the real reason, but only a pretext or an excuse for discrimination."[15] Thus, the jury necessarily found that the defendant's claim of deterioration of the quality of plaintiff's work was pretextual. In addition, the "grant[ing] of an increase in wages or salary is a normal incident of the way of life in the industrial and commercial world."[16] Thus, plaintiff is awarded a total of $56,957.20 in back wages and benefits, inclusive of anticipated salary increases.

### B. Liquidated Damages

In addition to the foregoing, plaintiff seeks liquidated damages, which are defined as an amount equal to the pecuniary losses sustained by way of lost wages, salary increases and other benefits of employment— in other words, the doubling of the pecuniary loss resulting from the violation of the Act.[17] The ADEA authorizes the imposition of liquidated damages *"only* in cases of willful violations."[18] There is no automatic doubling of pecuniary damages,[19] as in the

---

L.Ed. 1444 (1943); *Tiller v. Atlantic Coast Line R.R.,* 318 U.S. 54, 68, 63 S.Ct. 444, 451, 87 L.Ed. 610 (1943).

**13.** *See Tennant v. Peoria & Pekin Union Ry.,* 321 U.S. 29, 35, 64 S.Ct. 409, 412, 88 L.Ed. 520 (1944); *Bevevino v. Saydjari,* 574 F.2d 676, 685 (2d Cir.1978).

**14.** This figure represents 6% annual increases in salary for the two years plaintiff was ineligible for raises because of his unsatisfactory performance reviews.

**15.** Tr. at 272–73.

**16.** *EEOC v. Kallir, Philips, Ross, Inc.,* 420 F.Supp. 919, 923–24 (S.D.N.Y.1976), *aff'd on opinion below,* 559 F.2d 1203 (2d Cir.), *cert. denied,* 434 U.S. 920, 98 S.Ct. 395, 54 L.Ed.2d 277 (1977).

**17.** 29 U.S.C. § 216(b) (incorporated by reference in 29 U.S.C. § 262(b)).

**18.** 29 U.S.C. § 626(b) (emphasis added).

**19.** Congress ameliorated this requirement in 1947 by providing in § 11 of the Portal-to-Portal Act, 29 U.S.C. § 260, that in a FLSA action the court has discretion to disallow all or part of the liquidated damages if it finds that the employer acted in "good faith." Our Court of Appeals has held "good faith" is not a defense to a liquidated damage claim based upon a "willful" violation of the ADEA. *Goodman v. Heublein, Inc.,* 645 F.2d 127, 129–30 (2d Cir. 1981). *See also Kelly v. American Standard, Inc.,* 640 F.2d 974 (9th Cir.1981); *Wehr v. Burroughs Corp.,* 619 F.2d 276 (3d Cir.1980); *Loeb v. Textron, Inc.,* 600 F.2d 1003 (1st Cir.1979).

instance of a violation of the Fair Labor Standards Act ("FLSA"),[20] whose remedies, with certain exceptions, are incorporated by the ADEA.[21]

▮ In authorizing the imposition of liquidated damages in the instance of a willful violation of the Act, Congress did not define the term "willful" and the legislative history sheds no clear light on what was intended.[22] "Willful," as used in various statutes, "is a word of many meanings, its construction often being influenced by its context."[23] Our Court of Appeals has not passed upon the precise issue under the ADEA. Those Courts that have, differ as to the interpretation of the term.[24] The

basic divergence is whether a specific intent to violate the Act—that is, knowledge of the illegality of the act of discrimination—is required before liquidated damages may be imposed. This Court subscribes to the view that to entitle plaintiff to receive liquidated damages he must establish that the defendant acted with knowledge of the illegality of his action.

In this case the Court instructed the jury on the issue of willfulness, and the special verdict that was prepared contained a separate finding as to that issue.[25] However, after the Court had completed its charge, counsel for the parties agreed that the factual issue of willfulness be withdrawn from

---

**20.** 29 U.S.C. §§ 201–219 (1976).

**21.** § 7(b) of the ADEA, 29 U.S.C. § 626(b) incorporates the powers, remedies and procedures of the FLSA as set forth in 29 U.S.C. §§ 211(b), 216(b)–(e) and 217.

**22.** *Wehr v. Burroughs Corp.,* 619 F.2d 276, 282 (3d Cir.1980) ("a review of the legislative history of the ADEA and its assimilated acts uncovers nothing helpful on th[e] question [or the meaning of 'willfulness'].");  *Syvock v. Milwaukee Boiler Mfg. Co.,* 665 F.2d 149, 154 (7th Cir.1981) ("[n]either the statute nor its legislative history has defined the term 'willful' "). *See generally Wehr v. Burroughs Corp.,* 619 F.2d 276, 279–83 (3d Cir.1980).

**23.** *Spies v. United States,* 317 U.S. 492, 497, 63 S.Ct. 364, 367, 87 L.Ed. 418 (1943) (citing *United States v. Murdock,* 290 U.S. 389, 394–96, 54 S.Ct. 223, 225–26, 78 L.Ed. 381 (1933)). *See also United States v. Benjamin,* 328 F.2d 854, 862 (2d Cir.), *cert. denied,* 377 U.S. 953, 84 S.Ct. 1361, 12 L.Ed.2d 497 (1964). *Cf. Walker v. United States,* 192 F.2d 47, 49 (10th Cir. 1951). *See Browder v. United States,* 312 U.S. 335, 341–42, 61 S.Ct. 599, 602–03, 85 L.Ed. 862 (1941).

**24.** *See, e.g., Loeb v. Textron, Inc.,* 600 F.2d 1003, 1020 n. 27 (1st Cir.1980) (act is done willfully if "done voluntarily and intentionally, and with the specific intent to do something the law forbids; that is to say, with bad purpose either to disobey or to disregard the law") *quoting* E. Devitt & C. Blackmar, Federal Jury Practice & Instructions § 14.06, at 384 (3d ed. 1977); *Goodman v. Heublein, Inc.,* 645 F.2d 127, 131 (2d Cir.1981) (employer " 'knew' or showed 'reckless disregard' as to whether its conduct was prohibited by ADEA") (dictum; citation and footnote omitted); *Crosland v. Charlotte Eye, Ear and Throat Hospital,* 686 F.2d 208, 217 (4th Cir.1982) ("employer acts

willfully and subjects himself to [liability for liquidated damages under ADEA] if he knows, or has reason to know, that his conduct is governed by [the Act]") *quoting Spagnuolo v. Whirlpool Corp.,* 641 F.2d 1109, 1113–14 (4th Cir.1981); *Blackwell v. Sun Elec. Corp.,* 696 F.2d 1176, 1184 (6th Cir.1983) ("in order to show willfulness, an ADEA plaintiff must show that the employer's actions were voluntary and intentional.... Alternatively, the plaintiff may receive liquidated damages if he shows that the employer was reckless in not knowing that his actions were governed by the ADEA or that the employer acted in reckless disregard of whether his actions were governed by the ADEA"; "whether the employer deliberately, intentionally and knowingly discharged the employee because of his age.") (footnote omitted); *Syvock v. Milwaukee Boiler Mfg. Co.,* 665 F.2d 149, 155–58 (7th Cir.1981) ("a finding of willfulness should lie only if there is some showing as to the defendant's knowledge of the illegality of his actions .... [that] defendant knew or reasonably should have known that its actions toward [plaintiff] were violative of the ADEA") (footnote omitted); *Kelly v. American Standard, Inc.,* 640 F.2d 974, 980 (9th Cir.1981) ("employer must act 'deliberately, intentionally, and knowingly' "; specific intent not required) *quoting Wehr v. Burroughs Corp.,* 619 F.2d 276, 280, 282–83 (3d Cir.1980).

**25.** The special verdict form was as follows: (1) Do you find that plaintiff has sustained his burden of proof that age was a determinative factor for his discharge? [answer yes or no] If your answer is no, do not answer the following question. You answer only if you have answered yes to question 1. (2) Do you find that plaintiff has sustained his charge of willfulness—that is, the discharge was willful? [answer yes or no]

the jury and be determined by the Court.[26] Thus the jury decided only that age was a determinative factor for plaintiff's discharge.

The instruction to the jury on the withdrawn issue was "whether the defendant deliberately, intentionally and knowingly discharged plaintiff because of his age, and that the defendant knew or should have known such conduct was unlawful." [27] The Court adheres to that formulation as an essential element to support an award of liquidated damages. The very fact that Congress, aware that in the instance of a FLSA violation there was an automatic doubling of the pecuniary charge, specified that liquidated damages in the ADEA cases could be recovered "*only* in instances of *willful* violations," leaves no room to doubt that more was required than proof that age was a determining factor for plaintiff's discharge—that more is, a "specific intent; an intent which goes beyond the mere intent to do the act"—an intent to violate the law.[28]

Against the background of the applicable law, the Court considers the fact issue as to whether the plaintiff has sustained his burden of proof that his discharge was willful. At the outset, the Court notes that its denial of defendant's motion for judgment n.o.v. is not controlling on this issue. Under the latter motion, even if the Court disagreed with the jury's verdict, plaintiff still was entitled to have it upheld since the conflicting evidence previously referred to was sufficient to permit differing and reasonable inferences on the issue of whether age was a determinative factor for plaintiff's dis-

charge. There it was the jury, not the court, which was the fact-finder and so plaintiff was entitled to have that finding upheld.[29]

As to the issue before this Court, the record is scant of any evidence that directly or circumstantially gives support to a charge of willfulness. The plaintiff's superiors made evaluations over an eight or nine month period, which found plaintiff's work unsatisfactory and that it had deteriorated from his past performance. Nothing was presented to impugn the integrity of their evaluations or to support any claim they were motivated by ill will or hostility toward the plaintiff. The appraisal of the quality of plaintiff's work and whether it measured up to his past performance involved a subjective judgment on the part of his superiors. Age discrimination involves a determination as to alleged effects of age on performance as to which those charged with responsibility for making the assessment may and do frequently differ. Such a determination by itself does not implicate a willful discriminatory attitude. The factors that come into play in age discrimination are, as the Seventh Circuit has pointed out, "not the same as the insidious discrimination based on race or creed, prejudice or bigotry." [30] In age discrimination the judgment may be wrong, but it does not connote willfulness absent direct or circumstantial evidence to support the charge. The Fifth Circuit stated it somewhat differently:

> [T]he replacement of an older employee by a younger worker does not raise the

---

**26.** Tr. at 282–83.

**27.** Tr. at 275. That this was a separate and distinct element appears from the Court's charge which immediately followed the foregoing:

> However, even if you don't find that the defendant wilfully discriminated against plaintiff, as I have just defined that term, that does not mean that you must return a verdict for the defendant.
>
> Plaintiff may still recover provided he has carried his ultimate burden of proof as to all the other elements as I have already defined that burden.

Tr. at 275–76.

**28.** *United States v. Aluminum Co. of America,* 148 F.2d 416, 432 (2d Cir.1945). *See also Morisette v. United States,* 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952).

**29.** *Tennant v. Peoria & Pekin Union Ry.,* 321 U.S. 29, 35, 64 S.Ct. 409, 412, 88 L.Ed. 520 (1944).

**30.** *Syvock v. Milwaukee Boiler Mfg. Co.,* 665 F.2d 149 (7th Cir.1981) *quoting* 113 Cong.Rec. 34,742 (1967) (remarks of Rep. Burke).

same inference of improper motive that attends replacement of a black by a white person in a Title VII case.[31]

With respect to the evidence relied upon by plaintiff that a superior had referred to him as an "old man" and that something had to be done about the fact that he was age 65, had this Court been the fact-finder on that issue, it would have accepted the proffered explanation that these references, under the circumstances when made, were innocuous; indeed, contrary to the jury, upon the totality of the evidence, the Court would have found that plaintiff's discharge was for good cause. Thus, it follows that even if, contrary to this Court's view, a lesser standard of willfulness is the appropriate rule, the Court finds that plaintiff has failed to sustain his burden of proof. Accordingly, the claim for liquidated damages is denied.

## C. Prospective Damages

Plaintiff has withdrawn his request for reinstatement and in lieu thereof seeks an award of damages for future loss of earnings and other benefits from the date of judgment to his 70th birthday, when he no longer will be a member of the ADEA's protected class. Whether damages for future loss of earnings may be awarded under the ADEA has not been passed upon by our Court of Appeals, and district court rulings within the circuit are in conflict.[32] Similarly, appellate and district courts elsewhere have taken both sides on this issue.[33] Those that have rejected such claims have done so principally for two concerns: (1) doubt as to the court's power to grant future loss of earnings, and (2) the speculative nature of an award. The first concern arises out of the incorporation of the remedial enforcement provisions of the FLSA into the ADEA, resulting in a "model of imprecision."[34] Under the FLSA the employer is

**31.** *Marshall v. Goodyear Tire & Rubber Co.,* 554 F.2d 730, 736 (5th Cir.1977) (citing *Laugesen v. Anaconda Co.,* 510 F.2d 307, 312–13 n. 4 (6th Cir.1975)). *See also EEOC v. Wyoming,* —— U.S. ——, ——, 103 S.Ct. 1054, 1058, 75 L.Ed.2d 18 (1983) (conclusion of Secretary of Labor that "[a]lthough age discrimination rarely was based on the sort of animus motivating some other forms of discrimination, it was based in large part on stereotypes unsupported by objective fact, and was often defended on grounds different from its actual causes.").

**32.** *Compare Ginsberg v. Burlington Indus.,* 500 F.Supp. 696, 698 (S.D.N.Y.1980) (denying front pay) *with Pavlo v. Steifel Laboratories,* 22 Fair Empl.Prac.Cas. (BNA) 489, 493–94 (S.D.N.Y. 1979) (dictum) (front pay available under ADEA).

**33.** Some courts have denied awards of front pay. *See Wehr v. Burroughs Corp.,* 619 F.2d 276, 283 (3d Cir.1980); *Foit v. Suburban Bancorp,* 549 F.Supp. 264, 30 Fair Empl.Prac.Cas. (BNA) 90, 92–93 (D.Md.1982); *Monroe v. Penn-Dixie Cement Corp.,* 335 F.Supp. 231, 235 (N.D. Ga.1971); *Jaffee v. Plough Broadcasting Co.,* 19 Fair Empl.Prac.Cas. (BNA) 1194 (D.Md. 1979); *Covey v. Robert A. Johnston, Co.,* 19 Fair Empl.Prac.Cas. (BNA) 1188 (D.Md.1977); *Price v. Maryland Casualty Co.,* 391 F.Supp. 613 (D.Miss.1975), *aff'd,* 561 F.2d 609 (5th Cir. 1977); *Mader v. Control Data Corp.,* 19 Fair Empl.Prac.Cas. (BNA) 1192 (D.Md.1978). *Compare Kolb v. Goldring, Inc.,* 694 F.2d 869,

874–75 (1st Cir.1982) (front pay unavailable under ADEA), *with Loeb v. Textron, Inc.,* 600 F.2d 1003, 1021–23 (1st Cir.1979) (possibility of front pay under ADEA). Others, in contrast, have approved such awards. *See Naton v. Bank of California,* 649 F.2d 691, 700 (9th Cir. 1981) (affirming district court award of front pay); *O'Donnell v. Georgia Osteopathic Hospital,* 30 Fair Empl.Prac.Cas. (BNA) 195 (N.D.Ga. 1982); *Hoffman v. Nissan Motor Corp.,* 511 F.Supp. 352, 354–57 (D.N.H.1981); *Blim v. Western Elec.,* 496 F.Supp. 818, 823 (W.D.Okl. 1980); *Pavlo v. Steifel Laboratories,* 22 Fair Empl.Prac.Cas. (BNA) 489, 493–94 (S.D.N.Y. 1979) (dictum). *Cf. Fitzgerald v. Sirloin Stockade, Inc.,* 624 F.2d 945, 957–58 (10th Cir.1980) (Title VII); *EEOC v. Safeway Stores, Inc.,* 634 F.2d 1273, 1281 (10th Cir.1980), *cert. denied,* 451 U.S. 986, 101 S.Ct. 2321, 68 L.Ed.2d 844 (1981) (same); *EEOC v. Kallir, Philips, Ross, Inc.,* 420 F.Supp. 919 (S.D.N.Y.1976), *aff'd on opinion below,* 559 F.2d 1203 (2d Cir.), *cert. denied,* 434 U.S. 920, 98 S.Ct. 395, 54 L.Ed.2d 277 (1977); *Ginsberg v. Burlington Indus.,* 500 F.Supp. 696, 701 (S.D.N.Y.1980) ("while the arguments against permitting prospective damages are weighty, they are not so overwhelming that one could confidently conclude that a District Court lacked any discretion to award such damages, even where it had refused reinstatement.").

**34.** *Kennedy v. Whitehurst,* 690 F.2d 951, 955 (D.C.Cir.1982).

liable to the employee for "unpaid minimum wages ... or overtime compensation"[35] and, as already noted, when a litigant prevails, that amount is automatically doubled by its provision for liquidated damages. The ADEA, after appropriate references to the FLSA, correlated the two statutes by stating:

> Amounts owing to a person as a result of a violation of this chapter shall be deemed to be unpaid minimum wages or unpaid overtime compensation for purposes of sections 216 and 217 of this title: Provided, That liquidated damages shall be payable only in cases of willful violations of this chapter.[36]

Significantly, this ADEA enforcement section contains a provision not included in the FLSA, to wit:

> In any action brought to enforce this chapter the court shall have jurisdiction to grant such legal or equitable relief as may be appropriate to effectuate the purposes of this chapter, including without limitation judgments compelling employment, reinstatement or promotion, or enforcing the liability for amounts deemed to be unpaid minimum wages or unpaid overtime compensation under this section.[37]

The manifest purpose of this broad grant of legal and equitable power is to enable the courts to fashion whatever remedy is required to fully compensate an employee for the economic injury sustained by him. The power so granted is sufficient to authorize an award of future loss of earnings in

appropriate cases. To deny that authority would defeat a purpose of the Act to make a victim of discrimination "whole" and to restore him to the economic position he would have occupied but for the unlawful conduct of his employer.[38] To deny such authority would remove a deterrent force against future violations.[39]

■ Similarly, the Court does not agree with those holdings which deny future damages solely because of the prospect of speculative and windfall awards. The courts which have adopted that view emphasize their concern in the instance of a discharged employee who may be at the lower scale of the protected class (40 years of age)[40] and where an award may encompass a decade or more during which the employee, had he not been unlawfully discharged but continued in his employment, "might or might not get raises, reductions, fired or incapacitated."[41] However, that extreme situations may be envisioned does not warrant denial of relief in appropriate cases. The problem is more imaginary than real. Courts and juries are not without experience in assessing damages for future loss of earnings in breach of employment contract and personal injury cases. Each can readily be decided upon its individual facts. A discharged employee, however much he may be aggrieved by his alleged wrongful termination, cannot sit idly by. He is under a duty to mitigate damages by making reasonable efforts to obtain gainful employment in an available market.[42] It is not

---

**35.** 29 U.S.C. § 216(b).

**36.** 29 U.S.C. § 626(b).

**37.** Id.

**38.** Rodriguez v. Taylor, 569 F.2d 1231, 1238 (3d Cir.1977), cert. denied, 436 U.S. 913, 98 S.Ct. 2254, 56 L.Ed.2d 414 (1978). See also Franks v. Bowman Transp. Co., 424 U.S. 747, 763–64, 96 S.Ct. 1251, 1263–64, 47 L.Ed.2d 444 (1976); Geller v. Markham, 635 F.2d 1027, 1036 (2d Cir.1980), cert. denied, 451 U.S. 945, 101 S.Ct. 2028, 68 L.Ed.2d 332 (1981); Loeb v. Textron, Inc., 600 F.2d 1003, 1022 (1st Cir.1979).

**39.** Loeb v. Textron, Inc., 600 F.2d 1003, 1023 (1st Cir.1979) quoting Mitchell v. Robert De Mario Jewelry, Inc., 361 U.S. 288, 291, 80 S.Ct. 332, 334, 4 L.Ed.2d 323 (1960).

**40.** 29 U.S.C. § 631(a).

**41.** Covey v. Robert A. Johnston Co., 19 Fair Empl.Prac.Cas. (BNA) 1188, 1191 (D.Md.1977) quoting Monroe v. Penn-Dixie Cement Corp., 335 F.Supp. 231 (N.D.Ga.1971).

**42.** See EEOC v. Kallir, Philips, Ross, Inc., 420 F.Supp. 919, 925 & n. 14 (S.D.N.Y.1976), aff'd on opinion below, 559 F.2d 1203 (2d Cir.), cert. denied, 434 U.S. 920, 98 S.Ct. 395, 54 L.Ed.2d 277 (1977).

difficult to determine the availability of employment opportunities, the period within which one by reasonable efforts may be re-employed, the employee's work and life expectancy, the discount tables to determine the present value of future damages and other factors that are pertinent on prospective damage awards. The mere fact that damages may be difficult of computation should not exonerate a wrongdoer from liability. "The most elementary conceptions of justice and public policy require that the wrongdoer shall bear the risk of the uncertainty which his own wrong has created." [43] Moreover, to restrict the employee to losses sustained from the date of discharge to the date of the return of the verdict or entry of judgment would encourage the employee to delay the judgment date as long as possible. It would serve to encourage tactics of delay in order to obtain the benefit of increased verdicts by the mere passage of time.

■ It has already been noted that plaintiff originally sought, and then withdrew his request for, reinstatement and now seeks damages for loss of future salary. The defendant urges that the withdrawal of his request for reinstatement bars any future monetary award. Some courts have taken this view and held that where a discharged employee fails to request or withdraws a request for reinstatement, he automatically waives his right to prospective damages. [44] This Court does not agree. To foreclose prospective damage awards under that concept would mean that the employee is left with no choice but to seek reinstatement, a remedy which in particular cases may be undesirable or unwarranted considering both the employee's or employer's interests. [45]

■ Thus we consider loss of future salary commencing on December 3, 1982, up to which date the jury's award covered back salary and benefits. He was then one month past his 68th birthday. His 70th birthday, the date beyond which he is no longer within the protection of the Act, occurs on November 11, 1984, a period of twenty-three months. [46] It can hardly be disputed that at his age the likelihood of re-employment is minimal. His yearly salary at the time of his discharge was $38,050, at a monthly rate of $3,170. Thus the loss of salary for the twenty-three month period totals $72,910. In addition, it is acknowledged that financial benefits provided by the company amount to $2,132, which brings the total loss to $75,042. From this sum must be deducted the annual pension payments for the twenty-three month period which plaintiff is receiving and will continue to receive at the rate of $366 per month, the sum of $8,434. Thus the total loss is $66,608, which discounted to present value at the current rate of interest of 11% results in a net award of $60,107 for prospective lost wages, which, added to $56,957.20 under the jury's verdict, results in a grand total of $117,064.20.

## D. Attorneys' Fees

We next consider the application by plaintiff's attorneys for an allowance of fees as authorized by the ADEA. [47] Plaintiff's trial counsel has submitted an affidavit of services performed by him and a paralegal. The hours claimed by the attor-

**43.** *Bigelow v. RKO Radio Pictures,* 327 U.S. 251, 265, 66 S.Ct. 574, 580, 90 L.Ed. 652 (1946). Cf. *Brink's Inc. v. City of New York,* 546 F.Supp. 403, 410–11 (S.D.N.Y.1982).

**44.** *See Wehr v. Burroughs Corp.,* 619 F.2d 276, 283–84 (3d Cir.1980); *Covey v. Robert A. Johnston Co.,* 19 Fair Empl.Prac.Cas. (BNA) 1188, 1191 (D.Md.1977); *Monroe v. Penn-Dixie Cement Corp.,* 335 F.Supp. 231, 235 (N.D.Ga. 1971).

**45.** *Fitzgerald v. Sirloin Stockade, Inc.,* 624 F.2d 945, 957–58 (10th Cir.1980); *Grubb v. W.A.*

*Foote Mem. Hosp., Inc.,* 533 F.Supp. 671, 676 (E.D.Mich.1981); *EEOC v. Kallir, Philips, Ross, Inc.,* 420 F.Supp. 919, 927 (S.D.N.Y.1976), *aff'd on opinion below,* 559 F.2d 1203 (2d Cir.), *cert. denied,* 434 U.S. 920, 98 S.Ct. 395, 54 L.Ed.2d 277 (1977).

**46.** Plaintiff's life expectancy is 12 years. U.S. Dep't of Health & Human Services.

**47.** 29 U.S.C. § 626(b) (incorporating 29 U.S.C. § 216(b)).

ney total 180 for which he requests an allowance of $140 per hour, and the hours claimed for the paralegal total thirty at $40 per hour; in addition, reimbursement of $1,313.10 is sought for disbursements which include transcripts of depositions of various witnesses, subpoenaes, filing and marshal fees. Using a rule of thumb concept, plaintiff's attorney computes the lodestar figure for services rendered at $25,000 and requests a multiplier of 100%, or $50,000, since he represented plaintiff under a contingent fee basis.

■ The lodestar concept had its origin in *City of Detroit v. Grinnell*,[48] a class action suit, and has been generally accepted in fee application proceedings. If applied uncritically, it may distort the true value of attorneys' fees. The concept, based upon time expended, may lead to exaggerated claims for the value of services. If accepted without scrutiny, it may reward the inefficient and incompetent and penalize the efficient and competent.[49] Thus a lawyer who is knowledgable and experienced in a particular discipline of law may spend half the time required by a less experienced lawyer and in end result the inexperienced lawyer would receive twice the fee allowed to the other, assuming of course each requested the same hourly rate. To be sure, the Court in this case does not question the ability of plaintiff's attorney. On the contrary, based upon his appearance before this court through the years, it can readily be acknowledged that he is a very able attorney. But having attested to his competence, the essential issue remains as to what is a fair and reasonable fee for the services rendered in this case, which involves an overall assessment of the risks of litigation, its novelty and complexity and the results achieved.[50]

■ Preliminary, it is noted that compensation is sought for services and appearances by the attorney and the paralegal before the Equal Employment Opportunity Commission ("EEOC") prior to the commencement of this action. The attorney between the period of February 10, 1981 to February 10, 1982 logged 15 hours and the paralegal 7.25 hours for such services which, at the requested hourly charge amounts to $3,390. Such services are not compensable under the ADEA, which provides that the Court shall award to a successful plaintiff, in addition to his judgment, "a reasonable attorney's fee ... and costs of the action." [51] It has been held that the absence in the aforesaid section of the word "proceeding" in contrast to its inclusion in Title VII cases, which also authorizes attorneys' fees, precludes an allowance for services rendered during an administrative proceeding. The District of Columbia Court of Appeals, in a detailed analysis of the applicable provisions for attorneys' fees in the ADEA and Title VII cases, concluded that Congress did not intend an award of attorneys fees for services rendered at the administrative level to age discrimination claimants, whereas it did in the case of Title VII litigants. Referring to the reasoning of the District Court whose ruling was under consideration, it noted with respect to the two statutes: "[T]he *differences* between the enforcement schemes of each made clear that only under the Title VII regime is an award of attorneys fees per-

**48.** 495 F.2d 448, 470, 473 (2d Cir.1974). *See also Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.,* 487 F.2d 161 (3d Cir.1973).

**49.** *See Steinberg v. Carey,* 470 F.Supp. 471, 479 (S.D.N.Y.1979); *Boe v. Colello,* 447 F.Supp. 607, 610 (S.D.N.Y.1978); *Blank v. Talley Indus., Inc.,* 390 F.Supp. 1, 5 (S.D.N.Y.1975); *Levin v. Mississippi River Corp.,* 377 F.Supp. 926, 931 (S.D.N.Y.), *aff'd on opinion below,* 508 F.2d 836 (2d Cir.1974), *cert. denied,* 429 U.S. 833, 97 S.Ct. 97, 50 L.Ed.2d 98 (1976). *See also Ste. Marie v. Eastern R.R. Ass'n,* 497 F.Supp. 800,

812 (S.D.N.Y.1980), *rev'd on other grounds,* 650 F.2d 395 (2d Cir.1981) ("losing side [should not] be taxed as counsel learns his trade or is guilty of indulgences.").

**50.** *EEOC v. Sage Realty Corp.,* 521 F.Supp. 263, 268 (S.D.N.Y.1981). *See also City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 471–72 (2d Cir.1974).

**51.** 29 U.S.C. § 216(b) (incorporated by reference in 29 U.S.C. § 626(b)) (emphasis supplied).

mitted for administrative legal services." [52] The court concluded that the difference was justified since the exhaustion of administrative remedies is a prerequisite under Title VII before a suit may be commenced, whereas this is not required in an ADEA action. While it is true that the court's ruling related to an action commenced by a federal employee and the court did not expressly determine the issue with respect to private sector employees, there is no reason for a different conclusion. Indeed, the District Court whose ruling was under review held that neither federal nor private sector employees are entitled to an award of attorneys' fees for services rendered at the administrative level in ADEA cases.[53] This Court is in accord with that view and accordingly disallows the sum of $3,390 requested for services rendered by the attorney and the paralegal in administrative proceedings and prior to activity in connection with the litigation.

As to services rendered in the litigation, a reading of the schedule of charges suggests that in some instances time has been generously expended. Time is only of relative importance.[54] Allowances should be granted for time reasonably and necessarily required in the adequate representation and advancement of the client's interests [55] and one may not indulge in the luxurious practice of law at the expense of the other side.[56] Thus, time charged by the attorney for the preparation of a simple two-page complaint consisting of ten paragraphs, four of which contain allegations of plaintiff's place of residence, the incorporation of the defendant, and references to the ADEA, totals 9½ hours with the charge of $1,300. This simple complaint could well have been completed in substantially less time and it is difficult to accept nine and one-half hours as the necessary measure of time. So, too, a charge is made for a trip by a paralegal to the Eastern District Court to review a file in an entirely unrelated suit with a time factor of 3.25, which at $40 per hour, seeks to charge the defendant $130. It is not shown that such services were necessarily required in the preparation of the complaint or the prosecution of plaintiff's cause and just why the defendant should pay for educating a paralegal is not clear. There are other items which can be scaled down and no purpose would be served by a line-by-line analysis. Thus the Court concludes $20,000 represents a reasonable lodestar figure.

■ Applying its experience and knowledge of the nature of the case and events related to it, and taking into account all factors to be evaluated in the fixation of fees, including the contingency nature of the retainer, the Court deems a reasonable and fair fee to be the sum of $30,000, plus disbursements in the sum of $1,313.10.

So ordered.

**52.** *Kennedy v. Whitehurst,* 690 F.2d 951, 957 (D.C.Cir.1982).

**53.** *Kennedy v. Whitehurst,* 509 F.Supp. 226, 231 (D.D.C.1981), *aff'd,* 690 F.2d 951 (D.C.Cir. 1982). *See Muth v. Marsh,* 525 F.Supp. 604 (D.D.C.1981). *See also New York Gaslight Club, Inc. v. Carey,* 447 U.S. 54, 100 S.Ct. 2024, 64 L.Ed.2d 723 (1980). *But see Bleakley v. Jekyll Island-State Park Auth.,* 536 F.Supp. 236, 242–44 (S.D.Ga.1982).

**54.** *Blank v. Talley Indus., Inc.,* 390 F.Supp. 1, 5 (S.D.N.Y.1975). *See also Levin v. Mississippi River Corp.,* 377 F.Supp. 926, 931 (S.D.N.Y.), *aff'd on opinion below,* 508 F.2d 836 (2d Cir. 1974).

**55.** *Boe v. Colello,* 447 F.Supp. 607, 610 (S.D.N. Y.1978).

**56.** *Cf. Farmer v. Arabian American Oil Co.,* 31 F.R.D. 191, 193 (S.D.N.Y.1962), *rev'd,* 324 F.2d 359 (2d Cir.1963), *rev'd,* 379 U.S. 227, 85 S.Ct. 411, 13 L.Ed.2d 248 (1964).