**Joseph DOMINIC, Plaintiff,**

**v.**

**CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., Defendant.**

**No. 83 Civ. 7846 (JMW).**

United States District Court,
S.D. New York.

Sept. 30, 1986.

Martin Jacobson, Braunstein, Jacobson, Freeman & Visconi, New York City, for plaintiff.

Charles E. McTiernan, Jr., New York City, for defendant.

WALKER, District Judge:

## INTRODUCTION

The defendant in this case, Consolidated Edison Company of New York, Inc. ("ConEd"), has moved under Fed.R.Civ.P. 50(b) and 59(a) for a judgment notwithstanding the verdict or for a new trial, in lieu of a jury verdict finding ConEd in violation of the Age Discrimination in Employment Act ("ADEA"). The jury awarded Plaintiff Joseph Dominic $67,902 in back pay and $378,000 in front pay. ConEd claims that the jury's findings that the company fired Dominic in retaliation for his opposition to age discrimination and that ConEd willfully violated Dominic's rights is wholly unsupported by the evidence. ConEd also takes the position that in a case under ADEA, the court, and not the jury, must decide whether to award front pay and in what amount. Finally, Dominic has submitted an application for attorney's fees which ConEd also contests.

## FACTS

ConEd hired Dominic in 1972, when he was 38 years old, as a management employee. During the time period relevant to this action, from May 1981 through June 1983, Dominic held the position of Management Training Coordinator within the Power Generation Services organization of ConEd. His duties included the development, coordination and management of training programs within Power Generation Services, the monitoring of these programs, and some record-keeping activities.

Until sometime in 1982 his supervisors at the company returned consistently positive evaluations of Dominic's work, but in that year relations between Dominic and his superiors at ConEd deteriorated markedly. Beginning in 1982 his performance ratings fell and he was denounced for his work both verbally and in writing. The Director of Power Generation Services, Daryl Wall, was his most vociferous critic. The dissension between Wall and Dominic escalated until June of 1983 when she recommended that ConEd terminate its employment relationship with Dominic. The reasons underlying the tension between Wall and Dominic form the basis for Dominic's law suit under the ADEA.

Shortly after he was discharged from the company Dominic commenced an action under the ADEA, alleging that ConED had fired him because of his age or in retaliation for his opposition to the company's alleged discriminatory acts. Trial began on January 13, 1986 and was completed on January 24, 1986. ConEd defended the suit by arguing that it had discharged Dominic because his performance was unacceptable. The jury, however, found that although ConEd had not fired Dominic because of his age, the company had, indeed, terminated his employment in retaliation for his accusations of age discrimination. Moreover, the jury decided that ConEd's conduct was willful and then awarded Dominic $67,902 in back pay and $378,000 in front pay.

## ANALYSIS

The Age Discrimination in Employment Act prohibits employers from refusing or failing to hire and from discharging or otherwise discriminating against an employee because of his age or in retaliation for his opposition to age discrimination. 29 U.S.C. § 623. An employer, however, may take these actions, otherwise unlawful under the Act, for reasons unrelated to age or for good cause. *Id. McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) provides the analytical framework for determining whether a defendant has violated the Civil Rights laws, including the ADEA. Under the *McDonnell Douglas* rule, the plaintiff must first make a prima facie showing of age discrimination under the ADEA. The defendant then has the opportunity to show that the contested action was taken for a non-discriminatory reason. Finally the burden of proof shifts back to the plaintiff to show that the reasons put forth by the defendant were merely a pretext for discrimination. The issue under the ADEA raised by the parties here is whether the

Court should grant a judgment notwithstanding the verdict or a new trial because Dominic failed to introduce any evidence at trial to show that ConEd's claimed motive for firing Dominic was a pretext for retaliatory discharge.

A. *Judgment Notwithstanding the Verdict*

■ In deciding whether to grant ConEd's motion for a judgment notwithstanding the verdict, the Court begins with the presumption that a jury verdict following a full trial on the merits ordinarily must not be disturbed, particularly where the credibility of witnesses is an essential aspect of the case. The standard in the Second Circuit for granting a judgment notwithstanding the verdict is whether "the evidence, viewed in the light most favorable to the non-movants without considering credibility or weight, reasonably permits only a conclusion in the movants' favor." *Pena v. Brattleboro Retreat*, 702 F.2d 322, 323 (2d Cir.1983), quoting *Sirota v. Solitron Devices, Inc.*, 673 F.2d 566, 573 (2d Cir.1982).

In support of its motion for a judgment notwithstanding the verdict, ConEd points to several pieces of evidence that support the company's assertion that Dominic was fired due to legitimate complaints about his performance and not in retaliation for his assertion of his rights. Daryl Wall, as the principle witness in behalf of ConEd, testified at length that she found Dominic's work thoroughly unsatisfactory. She identified numerous errors in the plaintiff's work, several of which he admitted to making, his belated completion of assignments and their poor quality, and her repeated, unsuccessful attempts to extract a stronger performance from him. ConEd also introduced a detailed written list of her criticisms and explanations of areas in which he needed to improve his work which she compiled while acting as Dominic's supervisor. In January 1983 she gave him a low rating for his 1982 performance and told him she would meet with him again in 90 days for further discussions of his work. She testi-

fied that at the time she made it clear that she expected marked improvement from him in that time. She also testified that due to his failure to respond to specific criticism he received at the January meeting she could see no reason to wait until the full 90 days had expired before calling this second meeting. Accordingly, on March 17, 1983 she met again with Dominic. She confronted him with another list of his deficiencies which ConEd submitted as evidence in the trial. ConEd also points to several pages detailing the reasons for her dissatisfaction with Dominic's performance written by Wall shortly before she recommended Dominic's termination. ConEd concluded its litany of Dominic's deficiencies by asserting that at trial he had introduced no probative evidence to demonstrate that Wall's criticism and eventual dismissal of him was a pretext for retaliation against his complaints of age discrimination.

In arguing that Dominic made no showing that ConEd's claimed motives were a pretext, however, ConEd overlooks several important facts introduced by Dominic. For instance, Dominic produced evidence that his 1981 performance rating had been lowered without his knowledge shortly after his first complaint of age discrimination. This supports an inference of retaliation quite as easily as it does company dissatisfaction with his work. He also refuted Wall's explanation of non-retaliatory behavior by introducing evidence from which inferences could be drawn that she had deliberately deluged him with assignments, making it impossible for him to perform up to her expectations, with the intention that he fail. He showed that Wall held his March 17, 1983 performance review several weeks in advance of its originally scheduled date and argued to the jury that the date change was made without just cause. He argued that the early performance appraisal had the intended effect of cutting short the time he had been allotted to complete the work required of him before the review and rendered satisfactory performance on his part impossible. He also offered proof that Wall transferred

him to an office with poor working conditions and subjected him to constant nagging criticism. Based on this, and other evidence, the jury could reasonably have concluded that ConEd's asserted reasons for firing Dominic were a pretext for retaliation.

As to the jury's finding that ConEd's actions were willful, here too, the plaintiff introduced enough evidence to support the verdict in his favor. The Court charged the jury that to find willfulness, Dominic must prove by a preponderance of the evidence that ConEd knew its actions violated the ADEA, or showed reckless disregard as to whether it was in violation of ADEA. The evidence that Dominic introduced to show ConEd's purposeful retaliatory behavior, coupled with evidence showing that the company was aware of his complaints about age discrimination, was sufficient to support a finding of willfulness.

The jury, of course, could have chosen to accept ConEd's version of the events in 1982 and 1983. However, it did not do so and this Court can find no reason to overturn the jury's verdict. Particularly where the motives of the parties are in dispute, the jury must be allowed to evaluate the credibility of the different witnesses, and the veracity of contested facts. Here, the jury was fully entitled to accept Dominic's version of the disputed facts and issues. The motion for a judgment notwithstanding the verdict is therefore denied.

## B. *New Trial*

The Court also finds the defendant's alternative motion for a new trial to be without merit. The standard in the Second Circuit for granting a new trial requires the Court to review the entire trial, including the credibility and weight of the evidence and the complexity of the legal issues but to "abstain from interfering with the verdict unless it is quite clear that the jury reached a seriously erroneous result. The Judge's duty is essentially to see that there is not miscarriage of justice." *Bevevino v. Saydjari,* 574 F.2d 676 (2d Cir.1978), quoting 6A J. Moore, W. Taggart & J.

Wicker, Moore's Fed. Practice ¶ 59.08[5] (1973). After reviewing the evidence introduced at trial, including the demeanor and credibility of the witnesses, the Court finds that there was sufficient evidence to support the verdict in favor of the plaintiff. This Court cannot agree that the jury reached a seriously erroneous result.

## C. *The Award of Front Pay*

Also at issue in this case is the propriety of allowing the jury to decide whether and how much front pay should be awarded to a victim of age discrimination. At trial, the Court permitted the jury to award front pay, while expressly reserving any decision on the propriety of so doing for post-trial proceedings, and the jury awarded plaintiff $378,000.

District courts may, in appropriate circumstances, award front pay in cases under the ADEA as an equitable form of compensation when the plaintiff cannot be reinstated to his or her former position. *Whittlesey v. Union Carbide Corp.,* 742 F.2d 724 (2d Cir.1984). Although the Third Circuit has decided that once the trial court has determined that front pay is a necessary form of relief, the amount of front pay to be awarded should be decided by the jury, the Court declines to follow this method of assessing front pay. In *Whittlesey* the Second Circuit explicitly stated that front pay is a form of *equitable* relief. *Id.* Consequently, the court rather than the jury should evaluate equitable factors to determine not only whether front pay is warranted but also the amount to be awarded.

Equitable factors which courts have considered in deciding whether or not to award front pay include both the age of the plaintiff and his or her reasonable prospects of obtaining comparable employment elsewhere. *See e.g. Whittlesey,* 742 F.2d 724, 729 (because only four years remained until the plaintiff would reach 70 years of age, an award of front pay did not raise insurmountable problems of uncertainty which might surround a front pay award to

a younger worker.); *Koyen v. Consolidated Edison Company of New York Inc.,* 560 F.Supp. 1161, 1169 (S.D.N.Y.1983) (J. Weinfeld) (the plaintiff was 68 at the time of the jury award and therefore was unlikely to obtain other employment). In addition the plaintiff has a duty to mitigate damages by seeking re-employment. *See Koyen,* 560 F.Supp. at 1168; *Whittlesey,* 742 F.2d at 728.

■ These equitable factors are also relevant in determining the amount of front pay to which Dominic is entitled. Dominic was 52 years old at the time the jury reached its verdict. He also had found employment, as an administrator with the Township of Washington, New Jersey, although at a salary lower than he had received at ConEd. Finally he is highly educated, possessing a law degree, as well as a Masters degree in education administration. This presents a situation markedly different from the situations in *Koyen* and *Whittlesey.* In light of these facts, the Court finds that an award of front pay that assumes that Dominic will stay in his present lower paying job and awards him compensation for the difference between that job and what he would have earned at ConEd until he reaches the age of 70 is highly speculative. Moreover it may easily result in a windfall since Dominic's prospects of obtaining a more lucrative position are good given his academic credentials and his relative youth compared to the plaintiffs in *Whittlesey* and *Koyen.*

The plaintiff argues that despite extensive efforts to find more lucrative employment he could only find a job with a significant reduction in pay and fringe benefits and that because he has not passed the bar his law degree is unlikely to provide any additional source of income. The court is unpersuaded by these arguments. First, while Dominic's present position may not be as well paid as the one he held at ConEd, the Court is convinced that given the plaintiff's relative youth and education it is entirely likely that he will be able, if he so chooses, to find employment that pays more. In addition, Dominic may pass the

Bar Examination in the future and, even if he does not, his law degree provides him with an educational advantage over many of his competitors in the job market. Consequently front pay should be limited to an amount sufficient to compensate the plaintiff during a reasonable time for him to find more lucrative employment.

Three years have passed since the plaintiff's discharge. Though he worked hard to find a job initially, he apparently has expended considerably less effort in looking for employment that pays higher wages since he began work at his present position. Consequently, a further 2 years is a reasonable allotment of time in which he can be expected to find employment comparable to that which he lost at ConEd. The approximate difference between what he earns now and what he earned at ConEd for a period of 2 years is approximately $34,000. The jury award of $378,000 in front pay is therefore vacated and the Court awards $34,000 in front pay.

The plaintiff further contends that the front pay award is subject to doubling as "liquidated damages" pursuant to the ADEA, 29 U.S.C. § 626 and The Fair Labor Standards Act, 29 U.S.C. § 216(b) ("FLSA"). The FLSA authorizes an award of "liquidated damages" in an amount equal to the actual damages to which a successful plaintiff is entitled. The ADEA incorporates this portion of the FLSA by reference, stating that "amounts owing to a person as a result of a violation of this chapter shall be deemed to be unpaid minimum wages or unpaid overtime compensation for purposes of sections 216 and 217 of this title." 29 U.S.C. § 626. The provision further states that liquidated damages may be recovered only in cases of willful violations of the ADEA. *Id.*

■ The defendant, however, contends that because front pay is intended to be an equitable substitute for reinstatement it should not be subject to the liquidated damages clause of 29 U.S.C. § 216(b). The Court agrees with this analysis. Although the ADEA draws no explicit distinction between legal damages and an equitable

award of front pay, the FLSA, which it incorporates by reference, authorizes doubling of only unpaid minimum wages and overtime. These are legal damages awarded to compensate the plaintiff for past injury. In contrast, front pay is an equitable alternative for reinstatement designed to remedy future injuries. Hence, the Court must distinguish between front pay and back pay for the purposes of awarding liquidated damages. In addition, given the inherently speculative nature of any such award for future injury it would be manifestly unfair to require the defendant to pay liquidated damages based on an award of front pay. *See E.E.O.C. v. Colgate-Palmolive Co.*, 612 F.Supp. 1476 (S.D.N.Y. 1985) (because defendant's inability to reinstate plaintiff did not result from any willful behavior by the defendant the court would not double the front pay awarded pursuant 29 U.S.C. §§ 626, 216(b)). ConEd, however, must pay Dominic liquidated damages based on his award of legal damages. Accordingly, Dominic is entitled to $67,902 in back pay, $67,902 in liquidated damages and $34,000 in front pay or a total of $169,-804.

### D. *Attorney's Fees*

Dominic and ConEd also dispute the amount of attorney's fees to which Dominic is entitled. Dominic's attorneys have submitted a "lodestar" figure of $121,576.25 in legal fees, based on billing figures ranging from $75–$200 per hour multiplied by approximately 600 hours of work. They request that the Court double this figure because they took the case on a contingency basis despite a substantial risk that they would lose, and because their work was of exceptional quality. The defendant contests the fee requested by Dominic's attorneys on several grounds.

The defendant first argues that the plaintiff's total hours of work billed should be adjusted downward for the time spend on the four unsuccessful claims contained in the original complaint. In *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), the United States Su-

preme Court considered the issue of attorney's fees in the context of a claim for fees under 42 U.S.C. § 1988. The Court decided that the amount awarded as attorney's fees should bear a relationship to the degree of success obtained by the plaintiff in the litigation. *Hensley*, 451 U.S. at 434–36, 103 S.Ct. at 1939–41. If the plaintiff did not prevail on some claims that were unrelated to the successful claims, then the hours expended working on the unsuccessful claims should be excluded from the computation of the attorney's fees. *Id.* If, however, the claims lost were based on the same set of facts or on related legal theories then the court should look to the "significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Hensley*, 461 U.S. at 435, 103 S.Ct. at 1940. In other words the court should assess the reasonableness of the fees claimed in light of the success of the law suit.

■ In this case the plaintiff prevailed on only one of its original five claims. The Court finds however, that both the facts and the legal theories involved in the other claims based on age discrimination—two refusals to promote, one demotion, and an unlawful discharge—were inextricably intertwined with the claim of retaliatory discharge upon which the plaintiff ultimately prevailed. Moreover, the plaintiff was afforded full relief for his grievance and therefore the degree of success obtained for the plaintiff was high. Accordingly, the Court will not reduce the lodestar amount by any time expended on the unsuccessful claims.

■ The defendant also objects to the billing rates of the attorneys involved in the case. The petition submitted by the plaintiff indicates that the associates were billed at $75 per hour, two partners, at $125 per hour and a partner of another firm at $200 per hour. These rates are neither above the market rate in New York City nor unreasonable given the experience of the attorneys and the quality of the work they accomplished. Nor did the at-

torneys spend an unwarranted amount of time working on the case.

The four hours that Mr. Jacobson spent in preparation for and appearing before the New York State Division of Human Rights and the EEOC prior to this lawsuit should be subtracted from the lodestar figure. This Court is convinced by the reasoning of Judge Weinfeld in *Koyen, supra,* where he decided that Congress did not intend fees incurred in pre-litigation administrative proceedings to be recoverable in an action under the ADEA. Accordingly, the lodestar amount should be reduced by $500, bringing it to $121,076.25.

Finally, Dominic's attorneys request that the Court double the lodestar amount because of the substantial risks involved, the superior efforts expended, and the excellent results achieved in this litigation. This request must be denied. Although the issues were hotly contested and the plaintiff's attorneys did a first rate job, the legal issues and facts were not overwhelmingly complex. This was simply a hard fought legal contest, not unlike any other that the attorneys might litigate. Nor does the degree of success obtained by the attorneys warrant a 100 per cent addition to the lodestar amount. The attorneys did, indeed, agree to represent Dominic on a contingency basis, notwithstanding the substantial risks involved in this fee arrangement. This, however, does not alter the fact that the lodestar amount greatly exceeds the amount of money the attorneys would have received based on a percentage of Dominic's damage award. Although this Court cannot agree that the attorneys' fees should be limited by a percentage of Dominic's damage award, neither can it agree that the attorneys' fees should be doubled so as to greatly exceed that award. Such an addition would represent a windfall for Dominic's attorneys that would be out of proportion to the economic value of the case.

### E. Costs

The final point of contention between the Dominic and ConEd involves the calculation of costs to which Dominic is entitled. ConEd argues that Dominic is limited to a recovery of the "taxable costs" enumerated in Rule 11 of the local rules for the Southern and Eastern Districts of New York. Dominic's attorneys, contend that "out-of-pocket" expenses ordinarily charged to a fee paying client, such as photocopying charges, paralegal expenses and travel and telephone costs, are also recoverable in an action under the ADEA.

Although this issue has yet not been addressed by the Second Circuit Court of Appeals, the District of Columbia Circuit in *Laffey v. Northwest Airlines, Inc.,* 746 F.2d 4 (D.C.Cir.1984) considered the problem in the context of a sex discrimination in employment case.[1] The court decided that the prevailing litigant should receive reimbursement for out-of-pocket costs if the law firm customarily charged its clients for these items. *Laffey,* 746 F.2d at 30. A different result would penalize successful attorneys in civil rights litigation because their award of attorney's fees would not include costs normally paid by the clients. *Id.* This Court is persuaded by this reasoning. Accordingly, so long as the costs claimed by Dominic's attorneys include only expenses that they would ordinarily pass on to Dominic, they are entitled to reimbursement for these amounts as part of the attorney's fee assessed against ConEd.

The costs claimed by the plaintiff's attorneys here are not excessive nor do they include any clearly unnecessary items. This Court, therefore, orders ConEd to re-

---

**1.** The court in *Laffey* referred to 42 U.S.C. § 1988 as well as to 19 U.S.C. § 216(b) in reaching its decision as to whether certain "out-of-pocket" costs are compensable under the anti-discrimination laws. Federal courts, in devising standards for fee and cost awards to prevailing employment discrimination litigants, have tended to treat the different statutes authorizing these awards as governed by the same standards. *Sullivan v. Crown Paper Bd. Co., Inc.,* 719 F.2d 667, 669 (3d Cir.1983). The analysis of the Court of Appeals for the District of Columbia in *Laffey,* hence, is applicable to this action arising under the ADEA.

imburse Dominic's attorneys in the amount of $7,919.44 for the costs they reasonably incurred in bringing this lawsuit.

SO ORDERED.